THE STATE OF OHIO, APPELLEE, *v.* TRAPP, APPELLANT.

(No. C-76118—Decided June 22, 1977.)

*Mr. Simon L. Leis, Jr.,* prosecuting attorney, *Mr. William E. Breyer* and *Mr. William P. Whalen, Jr.,* for appellee.

*Mr. Douglas M. Mansfield,* for appellant.

BLACK, J.  Defendant Bryan Gilbert Trapp was indicted separately from his alleged companion James C. Smith, Jr., for offenses which occurred at a United Dairy Farmers store on June 22, 1975.  These two were tried jointly.  Trapp was found guilty of all four counts in his indictment: rape, aiding and abetting rape, aggravated robbery and felonious assault.  He now assigns seven errors, hereinafter designated by Roman numerals.  Smith appealed separately from his conviction by the same jury for three offenses arising out of the same circumstances (Case No. C-76135).

**I.**

"The court erred in overruling Trapp's motion to dis-

miss for failure to be tried within the time provided by R. C. 2945.71."

Trapp was a juvenile at the time of the alleged offenses, as he was when he was arrested on July 24, 1975. He was brought before the juvenile division and, after the procedures required by R. C. Chapter 2151 were met, he was transferred to the Court of Common Pleas by an order journalized August 7, 1977, fourteen days after his arrest. His joint trial with Smith began October 29, 1975. That was the ninety-seventh day after his arrest, but the eighty-third day after the transfer between courts. Trapp had been held in juvenile detention from the time of his arrest and in jail from the time of his transfer to the Court of Common Pleas.

The first claim presented is that Trapp was entitled to the same rights as an adult and the beginning day under R. C. 2945.71 should be the day of his arrest. However, the Supreme Court has decided otherwise. *State, ex rel. Williams,* v. *Court of Common Pleas* (1975), 42 Ohio St. 2d 433. A juvenile is not "a person against whom a charge of felony is pending" until he is transferred to an "adult" court.

The other issue presented is whether this different treatment for juveniles deprived Trapp of the equal protection of the law under the Fourteenth Amendment to the United States Constitution (to which we add Section 2 of Article I of the Ohio Constitution). We conclude that the separate and different treatment of juveniles under the speedy trial requirements of Ohio law has a reasonable and valid basis and is neither arbitrary, artificial nor capricious. We hold that it was not a deprivation of Trapp's constitutional rights to defer counting speedy trial time until his transfer to the Court of Common Pleas.

The provisions for binding a juvenile over to be tried under adult criminal procedures are carefully designed to protect the interests of the minor and the safety of the community. For instance, after a consideration of such matters as probable cause to believe the minor committed the offense; the minor's age and prior juvenile record; the efforts previously made to treat or rehabilitate him; and his

family environment and school record, and after mental and physical examinations of the child are conducted, the court must find reasonable grounds to believe that he is not amenable to rehabilitation by juvenile procedures and that the safety of the community requires that he be placed under legal restraint, including (if necessary) a length of time beyond his majority. The juvenile judge should have time to make a careful evaluation and decision. This is a reasonable classification. Compare *Porter* v. *City of Oberlin* (1965), 1 Ohio St. 2d 143, and *State* v. *Buckley* (1968), 16 Ohio St. 2d 128.

The first assignment of error is overruled.

## II, III, and IV.

"The court erred in denying the motion of Trapp's counsel to withdraw, or to sever Trapp's trial from Smith's trial, and to continue the case for appointment of new counsel.

"The court erred in permitting Trapp to participate in his own defense over the objections of counsel.

"The court erred in overruling Trapp's motions for a mistrial."

At the beginning of the second day of the trial, before continuing the *voir dire* examination which had begun the day before, but out of the hearing of the prospective jurors, Trapp's attorney, George Clark, moved to sever Trapp's trial from Smith's trial; this motion was denied. Clark then moved for permission to withdraw as defense counsel; that motion was also denied.

The reason for these two motions was that Mr. Clark knew that Trapp's alibi defense would require the presentation of perjured testimony or false evidence. Trapp insisted on the presentation of his alibi defense, against the advice of counsel. Reading into the record the specific provisions of several disciplinary rules of the Code of Professional Responsibility that prohibit a lawyer from using perjured testimony or false evidence and from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, and other disciplinary rules which require an attorney's withdrawal if he knows that his continued employ-

ment will result in the violation of a Disciplinary Rule,[1] Mr. Clark stated to the court:

"I am totally unable to proceed in accordance with my duties as an attorney, under the rules laid down by the Supreme Court of the state of Ohio, and in accordance with the oath of office I took. In addition, I am unable to proceed in accordance with my client's wishes. I cannot reconcile the two. * * *

"And I think that if I am forced to go forward that I am placed in the position of either not rendering effective assistance to my client in accordance with his wishes, or being unethical."

The court acknowledged Mr. Clark's right and duty to refuse to participate in the presentation of false evidence, but went on to say that the defendant himself was not prevented from presenting his alibi defense, and that Mr. Clark could cross-examine the state's witnesses and put the state to its proof. Mr. Clark responded that he would not proceed with any testimony on behalf of the defendant, suggesting Trapp might want other counsel. When the court asked Trapp whether he wished to say anything, the defendant replied:

"Well, I feel if I don't get, if I do get another counsel, I'm going to get found guilty anyway because it's too much prejudice in this court room. That's the way I feel about it."

Without any further examination of Trapp or inquiry into his competency to handle his own case, the trial proceeded as the court had directed. Mr. Clark conducted the *voir dire* examination on behalf of the defendant, Trapp made an opening statement on his own behalf over the objections of Mr. Clark and counsel for co-defendant Smith, and Mr. Clark cross-examined all of the state's witnesses.

---

[1] Mr. Clark cited the following Disciplinary Rules, in this order: DR 7-102(A) (4) and (6); DR 2-110(B) and (C); DR 1-102(A) (1), (3), (4) and (5). The record in this appeal does not raise the question of what confidential information must or must not be revealed by the lawyer to the tribunal. ABA Committee on Ethics and Professional Responsibility: Formal Opinion 341, September 30, 1975; Informal Opinion 1314, March 25, 1975.

At the conclusion of the state's case, Mr. Clark again raised the question of effective assistance of counsel for Trapp. The court responded by saying, in effect, that Mr. Clark should do the best he could under the circumstances. Mr. Clark replied that he declined to advise Trapp as to how to proceed with his defense and raised the question of his competency to conduct his own defense. The court then determined that Trapp understood Mr. Clark's position and that the court would assist Trapp in presenting such witnesses as he desired to call.

The presentation of defense witnesses proceeded on that basis, with the court questioning defense witnesses in accordance with the suggestions made by Trapp within the hearing of the jury. In addition, over Mr. Clark's objections, Trapp was permitted to take the stand on his own behalf, with the court again handling the examination. At the conclusion of all of the evidence, both Trapp and Mr. Clark made closing arguments.[2]

At no point did the court obtain from Trapp a waiver of his right to counsel or a consent to the procedure used in the trial. The court conducted no investigation or examination into the competency of Trapp to manage and handle his own defense.

The foregoing review of the record is presented in considerable detail in order to make clear the factual basis upon which our conclusions are reached. We do not intend to infringe upon the wide discretion accorded to trial judges in the management of trials, but constitutional demands of due process and fair trial outweigh, in this case, policies favoring wide judicial discretion and the prompt and efficient dispatch of court business. In particular, we note that the first crucial moment arose prior to the swearing of the jury, before jeopardy attached.

We hold that, on this record, defense counsel should

[2]During the course of the trial, Mr. Clark made two motions to sever, five motions to withdraw, and five motions for mistrial. All motions were overruled. He requested the court on three occasions not to allow Trapp to proceed with his own case (opening statement, taking the stand in his own behalf, and closing arguments). These requests were denied.

have been allowed to withdraw completely from this case, and that the court erred in failing to obtain from the defendant a knowing, intelligent and voluntary waiver of counsel.[3]

Mr. Clark spread on the record his specific reasons for requesting withdrawal, and we find that his statements were made in good faith and were amply sufficient to require his withdrawal from the case.[4] The Ohio Code of Professional Responsibility clearly prohibits a lawyer from knowingly using perjured testimony or false evidence and from making a false statement of fact. A lawyer has a duty to withdraw if the client persists in such a course. ABA Committee on Ethics and Professional Responsibility, Informal Opinion 1318, January 13, 1975. Compare *In re Complaint as to the Conduct of A., Accused* (1976), 276 Ore. 225, 554 P.

---

[3]In addition, it appears that defendant was effectively deprived of the assistance of counsel in violation of the Sixth Amendment of the United States Constitution, because Trapp was patently not competent to conduct those parts of his own defense in which Mr. Clark did not participate. Defendant has a constitutional right to defend himself if his waiver of right to counsel is knowing, intelligent and voluntary. *Faretta* v. *California* (1975), 422 U. S. 806. But in addition to claiming that right, he must be competent to conduct his own defense. *Westbrook* v. *Arizona* (1966), 384 U. S. 150. However, we do not reach these matters because there was no effective waiver of counsel in the first instance.

[4]The record is not complete enough to answer many questions about this particular conflict between lawyer and client, such as when counsel first became aware of the conflict, what attempts he made to resolve the differences with his client, why counsel waited until *voir dire* examination before making a record of the problem, and what possibility there was that this same conflict would or would not arise with other counsel in the future. Such additional information could conceivably be preserved for review on appeal by use of *in camera* examinations of counsel or defendant or both, with or without the presence of the prosecution, as the situation might dictate. See the procedures used and results obtained in a similar situation involving perjured testimony, disclosure by counsel and declaration of mistrial, in *McKissick* v. *United States* (C. A. 5, 1967), 379 F. 2d 754 and 398 F. 2d 342. Compare *Lessenberry* v. *Adkisson* (1973), 255 Ark. 285, 499 S. W. 2d 835. But we will not speculate about possibilities beyond the record before us, which is sufficient to disclose Mr. Clark's good faith and sound reasoning.

2d 479. In *Gebhardt* v. *United Rys. Co. of St. Louis* (1920), 220 S. W. 677, the Missouri Supreme Court, in holding that a lawyer who discovers his client's case cannot be successfully maintained without perjury has a duty to withdraw, said, at page 679:

"The law does not make a law office a nest of vipers in which to hatch out frauds and perjuries."

This duty to withdraw was recognized by the trial court in the instant case, but only in part. Mr. Clark was required to remain in the trial. While he performed part of the function of defense counsel, a significant portion of the defense was carried out by the defendant without the assistance of counsel. Trapp had some help from the judge, but that does not constitute "assistance of counsel." The denial of a substantial portion of defense counsel's function is as much a violation of constitutional rights to counsel as the total denial of all assistance of counsel.

However, the defendant did not knowingly, intelligently and voluntarily waive his right to counsel, in writing or otherwise. He did not ask to conduct part of his defense; he was told he would do so. The question of waiver was never put to him. This constituted a violation of Trapp's constitutional right to the assistance of counsel under the Sixth and Fourteenth Amendments of the United States Constitution. As stated by the Supreme Court in *Johnson* v. *Zerbst* (1938), 304 U. S. 458, there is a presumption against waiver of constitutional rights, and the mere fact that a defendant stands before the bench without counsel invokes and imposes on the court "a protecting duty" to determine whether the defendant intelligently and competently waives his right to counsel. In *Von Moltke* v. *Gillies* (1948), 332 U. S. 708, the Supreme Court required the judge to make certain the waiver of counsel is understandingly and wisely made after a penetrating and comprehensive examination of all the circumstances. In *Carnley* v. *Cochran* (1962), 369 U. S. 506, at 516 and 517, the high Court said:

"Presuming waiver from a silent record is impermissible. The record must show, or there must be an allega-

tion and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver. * * *

"Where, as in this case, the constitutional infirmity of trial without counsel is manifest, and there is not even an allegation, much less a showing, of affirmative waiver, the accused is entitled to relief from his unconstitutional conviction."

We find that as claimed in the second and third assignments of error, the court erred in refusing to allow Mr. Clark to withdraw and in not obtaining a written waiver of counsel knowingly, intelligently and voluntarily made by the defendant. This finding makes it unnecessary to rule on the fourth assignment of error.

### V.

"The court erred in permitting testimony that appellant made an in-custody statement."

The trial court granted defendant's motion to suppress his in-custody statement to police, without stating the basis of this ruling. However, the testimony adduced at the suppression hearing, the jury being absent, indicated that while Trapp had received adequate *Miranda* warnings, other circumstances were sufficient to convince the court that the statement he made was not voluntary.

Thereafter, during cross-examination of Trapp by the state, the court allowed Trapp to answer that he had made a statement to police while in custody, but did not allow the jury to hear the contents of that statement from any witness.

We hold that this was not error prejudicial to Trapp. The bare information that Trapp had made a statement, the contents of which the jury did not hear, may raise some questions in a juror's mind as to what was said, but it is impossible to say whether the juror would think the net result was favorable or unfavorable to defendant. That is a matter of speculation. Further, this jury was duly instructed that they could not draw any inference from a question which the court did not permit to be answered, and that they could not find Trapp guilty unless they found the state proved each and every element of the offenses beyond

a reasonable doubt by evidence produced in open court.

Crim. R. 33(E)(3) provides that a judgment shall not be reversed by reason of the admission of evidence unless the defendant was prejudiced thereby. We find that Trapp was not prejudiced by the admission of evidence in this instance. The fifth assignment of error is not well taken.

## VI.

"The court erred by refusing to charge on the lesser offense of robbery."

Defendant claims that the evidence was such that reasonable minds could conclude that he did not have on or about his person a deadly weapon (that is, a revolver), and therefore, that he was entitled to have the jury instructed on the lesser charge.

This claim has no merit. It is not necessary for the state to produce the deadly weapon. *State* v. *Hornsby*, unreported, First District Court of Appeals, No. C-76345, rendered April 19, 1976. Nor is it necessary for the state to prove that the deadly weapon was operable. Finally, the state's evidence that defendant had a weapon was not controverted by any defense evidence, and we do not believe the cross-examination of the state's witnesses so changed the character of their testimony about the weapon as to make it reasonable to conclude that what Trapp had was something other than a deadly weapon. *State* v. *Kilby* (1977), 50 Ohio St. 2d 21.

The defendant's total defense was alibi. This case is governed by *State* v. *Nolton* (1969), 19 Ohio St. 2d 133. We overrule the sixth assignment of error.

## VII.

"The court erred in sentencing Trapp to serve consecutively, terms of 7-25 years, 7-25 years, 7-25 years, and 5-15 years."

The aggregate of minimum terms of the four sentences is twenty-six years. R. C. 2929.41(E)(2) provides that the aggregate minimum term shall be fifteen years when consecutive terms are imposed for felonies other than aggravated murder or murder.

At the sentencing hearing on September 11, 1976, the

court orally ordered these sentences to be served consecutively to the extent permitted by law, thus limiting the aggregate minimum term to fifteen years under R. C. 2929.41 (E)(2). By inadvertence, this limitation was not placed in the judgment entry of that date. However, the court corrected this clerical mistake by an Entry of Sentence Nunc Pro Tunc, journalized April 22, 1977. This correction cured the clerical error. It was sufficient to advise the correctional authorities of the correct minimum term. The seventh assignment of error is therefore no longer prejudicial.

We reverse and remand this case for a new trial.

*Judgment reversed and cause remanded.*

BETTMAN, P. J., and CASTLE, J., concur.