DECISION.
{¶ 1} Defendant-appellant Andrew Bevins was convicted of assault[1] on a corrections officer. While in the Hamilton County Justice Center, Bevins was asked to turn in his bed sheets. He refused. After a corrections officer entered the cell to retrieve the sheets, Bevins crowded the officer. Bevins was asked to move and refused. After the officer shoved Bevins back with a double-handed palm-heel strike, a fight developed, and the officer ended up with a bitten finger. After a jury trial, Bevins was convicted and sentenced to the maximum prison term of 12 months.[2]
 {¶ 2} Bevins now appeals, arguing (1) that there was insufficient evidence to convict him for assaulting a corrections officer; (2) that the conviction was against the weight of the evidence; and (3) that his trial counsel was ineffective. He further argues that the trial court erred by (4) overruling his Crim.R. 29 motion for an acquittal; (5) sentencing him under unconstitutional statutes; (6) refusing to allow him to represent himself; (7) granting the state's Crim.R. 7(D) motion to amend the indictment; and (8) allowing the state to dismiss two African-American jurors. In light of State v. Foster, we vacate the sentence and remand for resentencing. All other assignments of error are overruled.
 I. A Fracas over Bed Sheets {¶ 3} Bevins was incarcerated in the Hamilton County Justice Center on December 8, 2004, on charges unrelated to this case. Around 3 p.m., Deputy David Humphries was assigned to collect the used bed sheets from each inmate's cell. When he approached Bevins's cell, Bevins stated that he did not want to give up his sheets. Deputy Humphries told Bevins that he would get the sheets himself and moved into Bevins's cell to pick up the sheets. Bevins then moved within three inches of Humphries's face to reiterate that he did not want to give up his sheets.
 {¶ 4} It is Justice Center policy that an inmate may not approach within an arm's length of an officer. This space is referred to as an officer's "personal space," and the policy is meant to protect an officer's safety. When Bevins moved within inches of Humphries's face, Humphries ordered Bevins to step out of his personal space. When Bevins refused, Humphries again told him to move. Bevins still refused, and Humphries used a double-handed palm-heel strike to Bevins's chest to move him back.
 {¶ 5} Bevins then grabbed Humphries's arm and pulled Humphries closer to him. Bevins also grabbed Humphries around his neck. Another inmate saw the ensuing struggle and came from behind to pull Bevins away. All three men then fell to the ground. Humphries testified that Bevins then bit him on his hand while they were struggling on the ground. Humphries finally freed himself by striking Bevins with several knee thrusts.
 {¶ 6} Other officers responded and broke up the melee. Humphries had scrapes on his neck and his finger was swollen. He was given a pain reliever and an ice pack from the medical staff.
 {¶ 7} At trial, a witness for Bevins testified that Bevins had simply grabbed Humphries's arms to keep Humphries from striking him, and that Bevins had never bitten Humphries. But the jury found Bevins guilty of assault on a corrections officer. The court sentenced Bevins to 12 months' incarceration, to be served consecutively to his other sentences.
 II. Sufficiency and Weight of the Evidence; Crim.R. 29 Motion {¶ 8} In his first, second, and third assignments of error, Bevins argues that (1) there was insufficient evidence to convict him of assault, (2) his conviction was against the weight of the evidence, and (3) the trial court erred by denying his Crim.R. 29 motion for an acquittal. The assault statute prohibits a person from knowingly causing or attempting to cause physical harm to another person.[3]
 {¶ 9} When reviewing the sufficiency of the evidence, we must examine the evidence in the light most favorable to the state and determine whether that evidence could have convinced any rational trier of fact that the essential elements of the crime had been proved beyond a reasonable doubt.[4]
 {¶ 10} A review of the weight of the evidence puts the appellate court in the role of a "thirteenth juror."[5] We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice.[6] A new trial should be granted only in exceptional cases where the evidence weighs heavily against the conviction.[7]
 {¶ 11} And the standard of review for the denial of a Crim.R. 29(A) motion to acquit is the same as the standard of review for the sufficiency of the evidence. A motion for a judgment of acquittal should not be granted when reasonable minds can reach different conclusions as to whether each element of the crime charged has been proved beyond a reasonable doubt.[8]
 {¶ 12} The state offered the testimony of Humphries, who stated that when he went to retrieve bed sheets from Bevins, Bevins refused to relinquish them. Bevins came within inches of Humphries's face, and Humphries testified that he needed to use a double-handed palm-heel strike to move Bevins from his personal space. Humphries then testified that Bevins had grabbed his arm and pulled him closer.
 {¶ 13} Another inmate saw the ensuing struggle and came from behind to pull Bevins away. All three men then fell to the ground. Humphries testified that Bevins then bit him on his hand while they were struggling on the ground. Humphries stated that he had finally freed himself by striking Bevins with several knee thrusts.
 {¶ 14} Bevins argued self-defense and called one witness, who testified that Bevins had merely grabbed Humphries's arms to keep Humphries from striking him, and that Bevins had never bitten Humphries.
 {¶ 15} We conclude that a rational factfinder, viewing the evidence in a light most favorable to the state, could have found that the state had proved beyond a reasonable doubt that Bevins had committed the offense of assault. Therefore, the evidence presented was legally sufficient to sustain Bevins's conviction. The trial court also did not err in overruling his Crim.R. 29(A) motion.
 {¶ 16} While Bevins presented a different scenario of events and claimed self-defense, our review of the record does not persuade us that the trier of fact clearly lost its way and created a manifest miscarriage of justice in finding Bevins guilty of assault upon a corrections officer. Therefore, the conviction was not against the manifest weight of the evidence.
 {¶ 17} Accordingly, Bevins's first, second, and third assignments of error are overruled.
 III. Sentencing {¶ 18} In his fourth and fifth assignments of error, Bevins argues that the trial court violated Blakely v.Washington[9] and United States v. Booker[10] by imposing the maximum sentence of 12 months for the offense, a fifth-degree felony.
 {¶ 19} While this appeal was pending, the Ohio Supreme Court ruled in State v. Foster that R.C. 2929.14(C) is unconstitutional.[11] Prior to Foster, for a trial court to order a maximum sentence under R.C. 2929.14(C), the court needed to find that the offender (1) had committed the worst form of the offense, (2) posed a great likelihood of committing future crimes, (3) was a major drug offender under R.C. 2929.14(D)(3), or (4) was a repeat violent offender under R.C.2929.14(D)(2).[12] The Ohio Supreme Court reasoned that because R.C. 2929.14(C) requires "judicial factfinding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant," it violatesBlakely v. Washington.[13]
 {¶ 20} The Ohio Supreme Court's remedy was to sever R.C.2929.14(C) as unconstitutional and to keep the remaining unaffected provisions of the sentencing statute, thus severing the statute's head and claiming that the body still lived. After severing R.C. 2929.14(C), the court held that "judicial factfinding is not required before a prison term may be imposed within the basic ranges of R.C. 2929.14(A) based on a jury verdict or admission of the defendant."[14] Accordingly, trial courts now have discretion to impose a prison sentence within the statutory range and are no longer required to provide reasons for imposing a maximum prison term.[15]
 {¶ 21} But because Bevins was sentenced under an unconstitutional statute, we must sustain the fourth and fifth assignments of error, vacate the sentence, and remand the case for resentencing in light of Foster.
 IV. Right to Self-Representation {¶ 22} In his sixth assignment of error, Bevins argues that the trial court erred by refusing to allow him to represent himself. This assignment is not well taken.
 {¶ 23} The accused in a state criminal trial has a constitutional right to represent himself without counsel, when his decision to do so is voluntary, knowing, and intelligent.[16] To invoke the right to self-representation, a defendant must timely and unequivocally request to proceed pro se. The trial court must then determine whether the defendant is competent to waive the right to counsel, and whether the defendant's waiver of counsel is knowing and voluntary. If the trial court denies the right to self-representation when properly invoked, the denial is reversible error.[17]
 {¶ 24} In State v. Vordenberge,[18] this court set down the following principles: "In determining whether a defendant has knowingly, intelligently, and voluntarily waived his right to be represented by counsel, the trial court is required to undertake a two-part inquiry: (1) whether the defendant is competent to waive the right to counsel[,] if [the court] has reason to doubt the defendant's competency, and (2) whether the waiver is knowing and voluntary. For the waiver to pass constitutional muster, the defendant must have `some sense of the magnitude of the undertaking and hazards inherent in self-representation.' For the trial court to provide an effective waiver of counsel, it should candidly and thoroughly discuss with the defendant `the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.'"[19]
 {¶ 25} Here, Bevins made weak attempts to assert a right to self-representation and appeared to manipulate the judicial process in doing so. When the court addressed his request for self-representation, he stated that he wanted to act pro se, but wanted an attorney to file subpoenas for him. The court responded that Bevins could have an attorney serve as a legal advisor, someone who would sit with him at trial and would serve as a resource.
 {¶ 26} Bevins answered the court by stating, "Well, okay. I'll go pro se. But I need someone to, you know, do certain things for me." The court responded by stating, "We're not running a paralegal service here. No. Either you go pro se and we can appoint a legal advisor to sit with you at trial, or we'll appoint another attorney." But Bevins was undeterred, and he remarked, "[H]ypothetically speaking, imagine if you appoint another attorney and he don't do what I need done. We are going back to pro se. Because up until the time I find someone who's going to cooperate with me, we'll be going backwards and forth for a long time."
 {¶ 27} The court retorted that Bevins had three choices: to act pro se, to have an attorney represent him, or to act pro se with a legal advisor. Bevins stated that he absolutely wanted to represent himself.
 {¶ 28} The court then addressed Bevins to ensure that he understood how to proceed pro se. The court asked if he understood that he would be held to the same rules of evidence as an attorney. Bevins answered no. The court attempted to explain the concept of the rules of evidence several times, and each time Bevins told the court that he did not understand. The court then asked if Bevins understood that the court would not function as his counsel. He said he did not understand this either.
 {¶ 29} The court believed that Bevins's expressions and attitude demonstrated that he understood what it was saying, but that he was making a mockery of the proceedings. The court then stated, "You know what I'm going to do, Mr. Bevins? You're abusing the process, you are abusing this court. Now I am offering you the options of a new attorney, pro se, or pro se with a legal advisor. Now, you get with the program. You respond to the questions, or I'm holding you in contempt. Do you understand? And you can take me to the Court of Appeals." Bevins responded, "I like that contempt move. Let's do the contempt part."
 {¶ 30} From our reading of the record, it seems clear that Bevins attempted to manipulate the court and delay the proceedings. While Bevins was competent to stand trial, he never voluntarily waived his right to counsel. And the record does not illustrate that Bevins had "some sense of the magnitude of the undertaking and hazards inherent in self-representation." Therefore, the trial court did not err in denying Bevins self-representation. The assignment of error is overruled.
 V. Crim.R. 7(D) Motion to Amend the Indictment {¶ 31} In his seventh assignment of error, Bevins claims that the trial court erred by granting the state's Crim.R. 7(D) motion to amend the indictment. The indictment listed December 4, 2004, as the date of the offense, but during trial, Humphries testified that bed-sheet removal was always scheduled on Wednesdays. Realizing that the incident happened on December 8, and that Humphries wrote his report on December 9 (and seeing that the sloppily written 9 was mistaken for a 4), the state moved to amend the indictment to reflect the correct date.
 {¶ 32} Bevins argues that when the trial court granted the Crim.R.7(D) motion over his objection, it should have discharged the jury. Crim.R. 7(D) provides that "[t]he court may at any time before, during, or after a trial amend the indictment * * * in respect to any defect, imperfection or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." Thus, the trial court could have amended the indictment so long as the amendment did not change the name or identity of the crime charged.[20]
 {¶ 33} In the present case, the trial court allowed the amended indictment merely to change the date of the offense. It did not alter the name or identity of the crime charged. The amendment added no new language to the indictment, nor did it add any additional elements that the state was required to prove.
 {¶ 34} And Bevins did not move for the discharge of the jury following the amendment of the indictment. Even had he done so, we conclude that it would have been proper for the trial court to overrule the motion, as Bevins would have been unable to show that he had been misled or prejudiced by the amendment. Bevins had notice of both the offense and the applicable statute.
 {¶ 35} Accordingly, Bevins's fifth assignment or error is overruled.
 VI. Batson Challenge {¶ 36} Bevins's eighth assignment of error maintains that the trial court erred by allowing the state to peremptorily challenge two black jurors because of their race. The record does indicate that Bevins objected at trial after the state's challenge of two potential African-American jurors, Wilkerson and Owens. After each objection, the trial court found that Bevins had established a prima facie case of purposeful discrimination and required the state to put forth a race-neutral explanation for the challenge. With respect to both persons, the court accepted the state's race-neutral explanation for the dismissal and rejected a finding of discriminatory intent. We review these determinations for error.
 {¶ 37} In Batson v. Kentucky,[21] the United States Supreme Court held that purposeful discrimination in the use of peremptory challenges to exclude members of a minority group violates the Equal Protection Clause of the United States Constitution. A Batson claim for purposeful discrimination in juror selection encompasses three steps. First, a defendant must establish a prima facie case of purposeful discrimination by demonstrating that members of a cognizable racial group have been peremptorily challenged, and that the facts and any other relevant circumstances raise an inference that the prosecutor has used the challenges to exclude jurors because of their race.[22] Once this burden is met, the state must then provide a race-neutral explanation for the striking of a particular juror.[23] If the state puts forth a race-neutral explanation, the trial court must then decide, on the basis of all the circumstances, whether the defendant has proved purposeful racial discrimination.[24] These circumstances include whether the prosecutor's proffered reason for striking a panelist of a potentially targeted racial group applies just as well to an otherwise similar panelist of a different race who is permitted to serve.[25]
 {¶ 38} The race-neutral explanation given by the prosecutor during a Batson challenge does not need to rise to the level justifying a challenge for cause.[26] We will not reverse a trial court's finding of no discriminatory intent unless the finding was clearly erroneous.[27]
 {¶ 39} The state excused two jurors — Wilkerson and Owens — who were African-American. During voir dire, Wilkerson had told the court that his son had been arrested after arguing with his girlfriend in the street. He stated that his son was placed on home incarceration, but later imprisoned on a probation violation. Wilkerson also said that this incident ruined his son's life and that there was no justice for him. He finally stated that he would have felt more comfortable not sitting on the jury. The state then requested to use a peremptory challenge for Wilkerson. Bevins responded with a Batson challenge.
 {¶ 40} The state provided a race-neutral explanation that Wilkerson had a son who he believed was wrongly incarcerated. The state also questioned whether Wilkerson had an ax to grind against the state of Ohio. The state's explanation was supported by Wilkerson's testimony, and after allowing the defense to comment that the jury was composed of ten white jurors, one African-American female, and Wilkerson, the court accepted it as a race-neutral basis for the challenge. We do not find error in this.
 {¶ 41} During Owens's voir dire, she had stated that two years earlier she had a criminal conviction for "attempt." She had failed to disclose her conviction on her juror questionnaire. When questioned about the crime, she implied that because her ex-boyfriend had admitted to a drug-related crime at her home, she was arrested. Her record reflected that she was convicted of a misdemeanor attempt charge that had been reduced from a felony-level crime.
 {¶ 42} The state requested to use a peremptory challenge on Owens, and again Bevins responded with a Batson challenge. The state then provided a race-neutral explanation that Owens had been convicted of a crime, but did not know what type it was. The state was also troubled that when Owens was asked whether she had a trial, pleaded guilty, or pleaded not guilty, she could not remember. Because Owens's record indicated that she was on probation, the state inferred that there were discrepancies between Owens's account and knowledge of her own criminal affairs. Bevins argued that there were ten white jurors and only two African-American jurors, and that Owens had indicated that she could be fair and impartial. But the court accepted the state's reason as a race-neutral basis for the challenge, and we do not find error in this.
 VII. Ineffective Assistance of Counsel {¶ 43} In his ninth assignment of error, Bevins argues that his counsel was ineffective for failing to (1) present evidence for an insanity defense and (2) request a jury instruction on self-defense.
 {¶ 44} In Strickland v. Washington, the United States Supreme Court enunciated the two-prong standard for evaluating claims of ineffective assistance of counsel.[28] The defendant must show that counsel's representation fell below an objective standard of reasonableness, overcoming a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.[29] And the defendant must show that counsel's performance prejudiced the defense so as to have deprived the defendant of a fair trial.[30] To prove prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."[31]
 {¶ 45} Bevins cannot demonstrate that the result of this case would have been any different. The court held a competency hearing before trial. Three different psychologists attempted to interview Bevins on numerous occasions, but he sat silently and refused to acknowledge or speak with any of the psychologists. Sheriff's deputies who saw Bevins on an everyday basis testified that they regularly had seen Bevins utilizing the law library for himself and other inmates, playing cards with other inmates, and using the computer. The court found that there was no evidence to suggest that Bevins suffered from a mental illness that would have impaired his ability to understand the basic proceedings of the court or work effectively with his attorney. Thus, the court found Bevins competent to stand trial.
 {¶ 46} Trial counsel did not pursue an insanity defense for Bevins. We cannot say this rendered trial counsel's assistance ineffective — Bevins was given many opportunities to speak with psychologists. Bevins's refusal to participate in the psychologist's tests left his counsel with no evidence of incompetency or insanity. And no evidence equals no defense.
 {¶ 47} Similarly, trial counsel's failure to ask for a self-defense instruction was not ineffective. As the Ohio Supreme Court recognized in State v. Barnes,[32] "[t]o establish self-defense, a defendant must prove * * * (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger."[33]
 {¶ 48} Here, Bevins did not survive the first prong — he was at fault for creating the situation that gave rise to the affray by refusing to hand over his bed sheets to Humphries. Therefore, trial counsel was not ineffective for failing to argue a losing proposition of law. Bevins's ninth assignment of error is overruled.
 {¶ 49} For the reasons given in our ruling on the fourth and fifth assignments of error, Bevin's sentence is vacated, and this case is remanded for resentencing in accordance with the law. In all other respects, the trial court's judgment is affirmed.
Sentence vacated and cause remanded for resentencing.
HILDEBRANDT, P.J., concurs.
(Judge Rupert A. Doan was a member of the panel, but diedbefore the release of this decision.)
[1] R.C. 2903.13(A).
[2] R.C. 2903.13(C)(2)(b).
[3] R.C. 2903.13(A).
[4] See State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
[5] See State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541.
[6] Id., citing Tibbs v. Florida (1982), 457 U.S. 31, 42,102 S.Ct. 2211.
[7] Id.
[8] See Crim.R. 29; see, also, State v. Bridgeman (1978),55 Ohio St.2d 261, 381 N.E.2d 184, syllabus.
[9] Blakely, 542 U.S. 296, 124 S.Ct. 2531.
[10] See United States v. Booker (2005), 543 U.S. 220,125 S.Ct. 738.
[11] See State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856,845 N.E.2d 470, at ¶ 61.
[12] R.C. 2929.14(C).
[13] Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph one of the syllabus.
[14] Id. at ¶ 99.
[15] Id. at ¶ 100.
[16] See Faretta v. California (1975), 422 U.S. 806,95 S.Ct. 2525; State v. Gibson (1976), 45 Ohio St.2d 366,345 N.E.2d 399, paragraph one of the syllabus.
[17] See State v. Reed, 74 Ohio St.3d 534, 535, 1996-Ohio-21,660 N.E.2d 456, citing McKaskle v. Wiggins (1984),465 U.S. 168, 177, 104 S.Ct. 944.
[18] See State v. Vordenberge, 148 Ohio App.3d 488, 492-493,2002-Ohio-1612, 774 N.E.2d 278.
[19] Id., quoting State v. Watson (1998), 132 Ohio App.3d 57,64, 724 N.E.2d 469, State v. Ebersole (1995),107 Ohio App.3d 288, 294, 668 N.E.2d 934, and State v. Weiss (1993),92 Ohio App.3d 681, 685, 637 N.E.2d 47.
[20] Crim.R. 7(D); State v. O'Brien (1987),30 Ohio St.3d 122, 125-26, 508 N.E.2d 144.
[21] See Batson v. Kentucky (1986), 476 U.S. 79,106 S.Ct. 1712.
[22] See State v. Hill, 73 Ohio St.3d 433, 444-445,1995-Ohio-287, 653 N.E.2d 271.
[23] See State v. Herring, 94 Ohio St.3d 246, 255-256,2002-Ohio-796, 762 N.E.2d 940.
[24] Id. at 256.
[25] See Miller-El v. Dretke (2005), 545 U.S. 231,125 S.Ct. 2317.
[26] See State v. White, 85 Ohio St.3d 433, 1999-Ohio-281,709 N.E.2d 140.
[27] Hill, 73 Ohio St.3d at 445, 1995-Ohio-287,653 N.E.2d 271.
[28] See Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052.
[29] Id. at 687-688.
[30] Id.
[31] Id. at 694.
[32] See State v. Barnes (2002), 94 Ohio St.3d 21,2002-Ohio-68, 759 N.E.2d 1240.
[33] Id. at 24, citing State v. Robbins (1979),58 Ohio St.2d 74, 388 N.E.2d 755, paragraph two of the syllabus.