[Cite as *State v. Nelson*, 2016-Ohio-8064.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | APPEAL NO. C-150480 |
| | | TRIAL NOS. B-1501315 |
| Plaintiff-Appellee, | : | B-1501453 |
| | | |
| vs. | : | |
| | | |
| JEFFREY NELSON, | : | *O P I N I O N.* |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgments Appealed From Are:  Affirmed

Date of Judgment Entry on Appeal:  December 7, 2016

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Timothy J. Bicknell*, Assistant Public Defender, for Defendant-Appellant.

**STAUTBERG, Judge.**

{¶1}   This appeal requires a determination of whether the defendant in a criminal case effectively waived his right to counsel.  We conclude that defendant-appellant Jeffrey Nelson did effectively waive his right to counsel through a written waiver of counsel and subsequent conduct.   Accordingly, we overrule Nelson's sole assignment of error and affirm the judgments of the trial court.

## I.   Background Facts and Procedure

{¶2}   Nelson became a suspect in three armed robberies that took place at businesses located in the Cincinnati area in the early part of 2015. On March 18, 2015, Nelson was indicted under the case numbered B-1501315 for two counts of aggravated robbery, two counts of robbery, one count of kidnapping, and three counts of having weapons while under a disability.  Several of those counts contained firearm specifications, and one weapons count contained a forfeiture notification. On March 26, 2015, Nelson was indicted under the case numbered B-1501453 for one count of aggravated robbery with a firearm specification, one count of robbery, and one count of having weapons while under a disability.

{¶3}   Due to Nelson's indigency, the trial court appointed counsel, James Bogan.  Nelson waived his right to be present at his arraignments, but also signed waivers indicating that he had received copies of the indictments. Bogan entered pleas of not guilty on Nelson's behalf, filed for discovery and a bill of particulars from the state, and had subpoenas issued to obtain videotape evidence from the businesses allegedly robbed by Nelson.

{¶4}   On April 6, Nelson filed a pro se motion to remove counsel. In the motion, he requested the appointment of an "African American" attorney.  At the outset of the hearing on the motion, held the following day, Nelson's girlfriend indicated that she would be retaining a specifically-identified attorney as counsel for Nelson.  The trial court continued the hearing for two days to allow Nelson the

opportunity to retain counsel on his own. The court told Nelson that if he were able to retain counsel, the court would remove Bogan, but that once Bogan was removed, it was "not going to appoint any more attorneys." Apparently Nelson was not able to retain counsel, and on April 9, notwithstanding its prior warning, the court "for good cause" appointed Massimino Ionna as substitute counsel on both cases.

{¶5} On April 23, at a scheduling conference, Ionna informed the court that he and Nelson were having difficulties. Ionna explained to the court that they had "set up a game plan" based on the discovery received and the results of his research, but Nelson was demanding that he file frivolous and untimely motions and had mentioned self-representation. Nelson then addressed the court and complained to the court that Ionna had not filed any motions, including a motion to suppress, and had not shown him any discovery. He further claimed that he was being "railroaded * * * by all you white men" and wanted to fire Ionna. The court spoke to Ionna and received confirmation that he would provide Nelson with copies of discovery and that he would diligently represent Nelson. The court set a trial date of June 25.

{¶6} On May 20, Nelson filed two documents pro se. Significantly, he filed a "Motion to Remove Counsel," in which he moved the court "to allow him to remove counsel." Nelson further handwrote on the motion: "I The Defendant Jeffrey Nelson, choose to waive my rights to counsel, pursuant to Criminal Rule 44 Division-C." The second document was a handwritten letter from Nelson to the court asserting the same motion and waiver, and included a request by Nelson to waive his right to counsel in "open court."

{¶7} On June 8, the trial court held a hearing on the motion. The court asked Nelson if he wished to remove counsel and proceed on his own. Nelson answered affirmatively. The court then said, "You do understand, sir, that if I do allow Mr. Ionna to be removed from the case, you will represent yourself? You understand that?" Nelson answered affirmatively.

{¶8} Next the court explained to Nelson that proceeding pro se would put him at a "tremendous disadvantage," and that the "advantage to the state goes way, way up." The court then asked Nelson if he still wanted to represent himself at trial. Nelson replied, "Absolutely, your honor." Then, the court responded, without qualification, that Ionna would "be in the back of the courtroom as an advisor," available if Nelson needed to talk to him, but that Ionna would not say a word in front of the jury. When the court asked Nelson if he understood, Nelson replied affirmatively. The court then orally granted Nelson's motion to remove counsel, accepted Nelson's waiver of his right to counsel, and warned that it would not grant Nelson any continuances, even if private counsel were retained.

{¶9} At the next pretrial setting, on June 11, Nelson appeared before the court and indicated that he would like counsel to be appointed because he did not believe the trial court would give him "a fair opportunity to represent himself" and he lacked the resources to hire counsel. The court replied, "Okay, Mr. Ionna has been on [the case] all the way, I asked him and he [wa]s going to sit in as an advisor if you [were] going to represent yourself. He is ready, willing, and able to represent you. * * * So, you want him back?" Nelson replied, "That is okay with me, your honor." The prosecutor then asked Nelson to whom he should provide the outstanding discovery that he had brought to the court. Nelson confirmed that Ionna had been reappointed and requested that the discovery be sent to Ionna. The court subsequently journalized the reappointment of Ionna as trial counsel.

{¶10} Eight days later, on June 19, the parties appeared before the court. Although the transcript from the hearing indicates that Ionna had requested the hearing, the record does not reflect his filing of a motion. Ionna asked to withdraw as counsel and informed the court that "[a]fter conversations with Mr. Nelson, we are at a point that I can no longer represent him, both with what he would like to see done with the case and also allegations he is making towards me." The court replied,

4

"I know that you do not take that sort of situation lightly. I have known you for a long time, and you indicated to me that you cannot at this point represent him. That's good enough for me." The trial court orally granted Ionna's motion to withdraw.

{¶11} After thanking Ionna, the court then asked Nelson if he wanted to say anything. Nelson stated,

> Well, I would like to thank Mr. Ionna for what you have done for my case. We just seem not to be able to communicate effectively. * * * I'm not saying that it is Mr. Ionna's fault. I am a little upset because I feel that I am a victim of a malicious arrest which has resulted in a false imprisonment. He's a great guy, but I just don't feel like his representation is for me. * * * So if the Court would allow me to have counsel appointed to me, I would like Arica Underwood to be my attorney.

{¶12} The court denied Nelson's request, explaining that Ionna was his second attorney and that Ionna had once been removed because "the two of you [were not] able to get along." After noting that Nelson was back in the position of being unrepresented, the court then made reference to Nelson's prior waiver of counsel when it stated,

> You have indicated to me before on the record, sir, that you wish to represent yourself. As I indicated at that point, that was not a good move, but you said that's what you wanted. That's where we are now. On June 25th, you will represent yourself unless you hire an attorney to represent you on the 25th. It's not appropriate, it's not fair, it's not reasonable, and it's not legal, in my opinion,

5

at this point for me to appoint a specific attorney for you. And that's where we are.

{¶13} The court told Ionna and Nelson that Ionna would not be serving as an advisor, either, based on the allegations that Nelson had made against him. Nelson then asked the court to confirm that it was denying his request for counsel. The court said, "Absolutely," and began discussing with Ionna and the courtroom deputy the process of getting discovery material to Nelson.

{¶14} At the conclusion of the hearing, Nelson asked the court how he was to subpoena witnesses, indicating that no witnesses had been subpoenaed for the defense, to his knowledge, and that he did not know who to subpoena because he had not seen the additional discovery. The court replied that Nelson's circumstances were "unfortunate," as his witnesses should have been subpoenaed at that point. The court indicated that it would "do its best" to assist Nelson if he created a witness list.

{¶15} On June 25, trial commenced on the 11 counts. Nelson indicated that he was ready to proceed pro se, but he asked for a bench trial and for his "legal coach," after not seeing one in the courtroom. The trial court did not respond to Nelson's question about his "legal coach" and proceeded to have Nelson execute a jury waiver. Nelson renewed his request for a "legal coach" after the state called its second witness, but the court rejected it. At the conclusion of the trial, Nelson maintained that his right to counsel had been violated. Subsequently, the court found Nelson guilty of all counts and, after merging some of the counts, imposed an aggregate prison sentence of 54 years.

## II. Analysis

{¶16} In his sole assignment of error, Nelson contends that the trial court erred by having him proceed pro se at trial, in violation of his right to counsel as guaranteed by the Sixth Amendment to the United States Constitution, as applicable

to the states by the Fourteenth Amendment, and Article I, Section 10 of the Ohio Constitution.

### A. Right to Counsel and Its Waiver

**{¶17}** It is not disputed that Nelson had a constitutional right to trial counsel in this prosecution for serious offenses. This right to counsel is "fundamental." *Gideon v. Wainwright*, 372 U.S. 335, 342, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *United States v. Proctor*, 166 F.3d 396, 402 (1st Cir.1999); *State v. Wellman*, 37 Ohio St.2d 162, 171, 309 N.E.2d 915 (1974). Whether Nelson waived his right to counsel is an issue that we review de novo. *See Proctor* at 401; *State v. Griffin*, 10th Dist. Franklin No. 10AP-902, 2011-Ohio-4250, ¶ 26.

**{¶18}** A defendant may waive the right to counsel and proceed pro se "when he voluntarily, and knowingly and intelligently elects to do so." *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph one of the syllabus, citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Indeed, a defendant has an equal constitutional right to proceed pro se. *Faretta.*

**{¶19}** Crim.R. 44 governs the procedure for waiver of counsel. It provides that "[w]aiver of counsel shall be in open court and the advice [of the right] and waiver shall be recorded." Crim.R. 44. As an additional safeguard in "serious offense" cases, the waiver must be in writing. *Id.* This written waiver is not constitutionally required, and therefore, while literal compliance is preferred, trial courts need only substantially comply with the rule. *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 38.

**{¶20}** Ultimately, for a waiver to be valid, the record must demonstrate that the trial court made a sufficient inquiry to determine that the defendant "fully understood and intelligently relinquished his or her right to counsel." *Id.* at ¶ 39, citing *Gibson* at paragraph two of the syllabus.

{¶**21**} However, although a waiver of counsel may never be presumed, *Wellman*, 37 Ohio St.2d 162, 309 N.E.2d 915, at paragraph two of the syllabus, following *Carnley v. Cochran*, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); *see also State v. Trapp*, 52 Ohio App.2d 189, 195-196, 368 N.E.2d 1278 (1st Dist.1977), a defendant may also be found to have waived his right to counsel by his conduct. *See United States v. Oreye*, 263 F.3d 669, 670 (7th Cir.2001); *State v. Ebersole*, 107 Ohio App.3d 288, 293, 668 N.E.2d 934 (3d Dist.1995). This is such a case.

### B. Inferred Waiver of Right to Counsel

{¶**22**} The right to counsel guarantee for an indigent defendant means adequate representation, not counsel of his choice. *See Wheat v. United States*, 486 U.S. 153, 159, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983), citing *Morris v. Slappy*, 461 U.S. 1, 13-14, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983); *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Therefore, self-representation may be deemed voluntary where the court finds a valid waiver of the right to counsel due to the defendant's refusal to proceed with competent court-appointed counsel. *See United States v. Moore*, 706 F.2d 538, 540 (5th Cir.1983) (holding that a "persistent, unreasonable demand for dismissal of counsel and appointment of new counsel" resulted in valid waiver of counsel). A defendant may be deemed to have refused competent counsel even when the attorney initiates the removal that leaves the defendant unrepresented, as in this case. *See Oreye* at 671-672.

{¶**23**} Thus, in *United States v. Garey*, 540 F.3d 1253 (11th Cir.2008), the appellate court concluded that the defendant had validly waived his right to counsel, even though he repeatedly refused to vocalize his waiver, where the trial court had inquired into and rejected the defendant's claims that appointed counsel had a conflict of interest, and the court had repeatedly warned the defendant that he would proceed pro se if he continued to refuse to communicate with appointed counsel. The appellate court explained that the trial court may discharge counsel if it "is

8

assured the defendant (1) understands the choices before him, (2) knows the potential dangers of proceeding pro se, and (3) has rejected the lawyer to whom he is constitutionally entitled." *Id.* at 1267, quoted in *State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, 937 N.E.2d 97, ¶ 72; *see Oreye* at 670-671.

{¶24} Similarly, in *King v. Bobby*, 433 F.3d 483 (6th Cir.2006), the Sixth Circuit Court of Appeals held that the defendant King was not entitled to habeas relief on Sixth Amendment grounds, even though King had not been accompanied by an attorney when convicted and sentenced and had not expressly waived his right to counsel. In rejecting *King's* claim, the Sixth Circuit explained that the trial court had given the defendant the three clear and valid choices of continuing with appointed counsel, retaining private counsel, or proceeding pro se, and that by rejecting the first two options, the defendant had necessarily chose self-representation. *Id.* at 492.

{¶25} Viewing the facts of this case as presented in a chronological analysis of the record herein, in light of the totality of the circumstances, from the first appointment of counsel until the beginning of the trial, we find that the trial court afforded Nelson multiple opportunities to be represented by counsel. Nelson rejected them, thereby waiving his right to counsel through his conduct.

{¶26} First, the trial court warned Nelson at the April 7 hearing on Nelson's request for an African American attorney that, if Nelson retained his own attorney, the court would remove appointed-counsel Bogan from the case, but that once Bogan was removed, it was "not going to appoint any more attorneys." Despite this warning, the court a few days later appointed Ionna as Nelson's attorney because Nelson had not hired his own attorney. At the court's June 8 hearing, Nelson acknowledged that he wanted Ionna removed from his case and wanted to represent himself. The court warned Nelson that proceeding pro se would put Nelson at a "tremendous disadvantage," and that the advantage to the state would go "way up." Even though Nelson later requested that counsel be reappointed, the discussions on

9

the record at the June 8 hearing show that Nelson understood the dangers in proceeding pro se. And while counsel had initiated withdrawing from representation on June 19, Nelson did not object to the removal and informed the court that "we just seem not to be able to communicate * * * I just don't feel his representation is for me."

{¶27} Not to be overlooked is the fact that the court appointed counsel for Nelson on three separate occasions. By rejecting appointed counsel three times, Nelson "necessarily chose self-representation." *See King*, 433 F.3d at 492.

{¶28} Nelson never recanted his desire to represent himself at the opening of the trial itself, and he demonstrated his continued desire to do so. His equivocal question about his "legal coach" midway through the proceedings is not sufficient to impose upon the court the duty to make yet another appointment of counsel.

{¶29} In sum, we hold that Nelson waived his right to counsel through his conduct.

{¶30} The assignment of error also includes Nelson's contention that the trial court's actions in this case resulted in a deprivation of his constitutional right to due process. But Nelson does not separately argue this issue, and we decline to address it. *See* App.R. 12(A)(2).

### III. Conclusion

{¶31} Nelson's sole assignment of error is overruled. The judgments of the trial court are affirmed.

Judgments affirmed.

HENDON, P.J., concurs.
CUNNINGHAM, J., dissents.

CUNNINGHAM, J., dissenting.

{¶32} I respectfully dissent. First, I note that it is not dispositive in this case whether Nelson effectively waived counsel before June 11, because on that date Nelson sought representation, and the trial court reappointed Ionna. A waiver of

counsel is not " 'a choice set in stone,' " *Proctor*, 166 F.3d at 402, quoting *Menefield v. Borg*, 881 F.2d 696, 700 (9th Cir.1989), and the right to representation may be reasserted. *Id.* Next, I clarify that Nelson never sought to represent himself after counsel had been reappointed on June 11 upon his unequivocal request. Nelson became unrepresented on June 19, after the trial court granted Ionna's motion to withdraw. Nelson complained to the trial court at that hearing on the motion to withdraw and then again at trial that his right to counsel had been violated. The majority opinion's suggestion otherwise is not supported by the record. Finally, as I explain below, the record is devoid of a voluntary, knowing, and intelligent waiver by Nelson of the right to counsel at the June 19 hearing.

{¶**33**} When a defendant does not request self-representation, his conduct constitutes a voluntary, knowing and intelligent waiver of the right to counsel if the record demonstrates that the trial court (1) engaged defense counsel and the defendant in a sufficient inquiry to determine whether the defendant was rejecting competent counsel, (2) warned the defendant of the consequences of his actions, and (3) sufficiently and accurately explained to the defendant the perils of self-representation and the facts essential for the defendant to understand what is at stake. *See Garey*, 540 F.3d at 1267; *Ebersole*, 107 Ohio App.3d at 293-294, 668 N.E.2d 934; *State v. Weiss*, 92 Ohio App.3d 681, 685, 637 N.E.2d 47 (9th Dist.1993).

{¶**34**} "Perfunctory questioning is not sufficient" when the court is determining the facts to establish a knowing, intelligent, and voluntary waiver of the right to counsel. *United States v. Welty*, 674 F.2d 185, 187 (3rd Cir.1982). "Courts must 'indulge in every reasonable presumption against waiver' of the right to counsel." *State v. Obermiller*, Slip Opinion No. 2016-Ohio-1594, ¶ 29, quoting *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).

{¶**35**} Equally important to determining if a waiver of counsel may be inferred, when the defendant has neither signed a waiver nor expressly requested

self-representation, is whether the trial court ensured that the defendant understood what was at stake and the hazards of self-representation. *Weiss* at 685, 637 N.E.2d 47. The court must consider all the circumstances in the case, including the background and experience of the defendant. *See Ebersole* at 293, citing *State v. Hook*, 33 Ohio App.3d 101, 103, 514 N.E.2d 721 (1986). A waiver is valid only if the defendant " 'knows what he is doing and his choice is made with eyes open.' " *Farretta*, 422 U.S. at 835, 95 S.Ct. 2525, 45 L.Ed.2d 562, quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942).

{¶36} In this case, Ionna initiated his withdrawal as counsel orally at the June 19 hearing. Ionna informed the court that he and Nelson were not in agreement on how to proceed, and that Nelson had made "allegations" toward him. Ionna did not provide any specifics, and the court did not request any. Instead, the court thanked counsel, accepted Ionna's statement that he could no longer represent Nelson, and effectively granted the motion to withdraw, notwithstanding the absence of an entry to that effect.

{¶37} The trial court did allow Nelson to address the court. Nelson did not contest the withdrawal and acknowledged that he and his attorney were not able to communicate effectively. But instead of asking to represent himself, Nelson asked for substitute counsel.

{¶38} Ultimately, the court did not warn Nelson that if Ionna were allowed to withdraw, Nelson would have to represent himself. Instead of warning Nelson, the court determined that because Nelson was again without counsel and had previously indicated his desire to represent himself, Nelson, who was indigent, would represent himself, unless he retained private counsel.

{¶39} And the trial court's previous warnings to Nelson, while relevant, were not so clear when considered in that context such that one could conclude that Nelson understood that his conduct would amount to a waiver. The court did not

warn Nelson before the June 19 hearing that his failure to cooperate with Ionna would result in self-representation, and the court did not warn Nelson at the June 19 hearing that if it allowed Ionna to withdraw, Nelson would represent himself.

{¶40} Further, the record does not demonstrate that Nelson understood the challenge that he was facing, or that he made a choice with "eyes open." *Adams*, 317 U.S. at 279, 63 S.Ct. 236, 87 L.Ed. 268, quoted in *Farretta*, 422 U.S. at 835, 95 S.Ct. 2525, 45 L.Ed.2d 562. On June 8, when the trial court granted Nelson's subsequently revoked request to represent himself, the court told Nelson only that proceeding pro se would put him at a "tremendous disadvantage," and that the "advantage to the state goes way, way up." This cursory statement was insufficient to ensure that Nelson understood what was at stake and the hazards of self-representation. *See Weiss*, 92 Ohio App.3d at 685, 637 N.E.2d 47.

{¶41} Also troubling is the fact that, on June 8, the trial court informed Nelson that Ionna would "be in the back of the courtroom as an advisor." The court did not address the advisor issue again until the June 19 hearing, when it permitted Ionna to withdraw and informed Nelson that Ionna would not be his advisor.

{¶42} While it is well established that a pro se defendant has no constitutional right to a legal coach or standby counsel, *see Mendez-Sanchez*, 563 F.3d 935, 947 (9th Cir.2009), cited in *United States v. Williams*, E.D.Ky. No. 3:10-11-DCR, 2011 U.S. Dist. LEXIS 16118 (Feb. 1, 2011), this was never explained to Nelson, and nothing in the record shows that based on his experiences, he knew otherwise. Subsequently, when Nelson appeared for trial on June 25, he requested a legal "coach," after noting that he did not see one in the court room. Later in the trial, he again asked for a legal "coach." When we review these facts, we must "indulge in every reasonable presumption against waiver" of the right to counsel. *Brewer*, 430 U.S. at 404, 97 S.Ct. 1232, 51 L.Ed.2d 424.

{¶43} The majority concludes, based on the trial court's admonitions before the June 19 hearing, that the court sufficiently warned Nelson. They further conclude that Nelson rejected competent counsel. Even accepting those conclusions, the record still does not support a finding of a valid waiver. The record demonstrates that Nelson was reasonably mistaken as to the challenge he would be facing, because he believed that, if he proceeded pro se, he would have a "coach" in the back of the courtroom to assist him.

{¶44} The trial court certainly has discretion in moving cases along and, thus, may refuse to indulge a defendant's manipulation of his right to counsel and his mutually exclusive right to self-representation for purposes of delay. *See United States v. Pollani*, 146 F.3d 267, 273 (5th Cir.1998), citing *United States v. Taylor*, 933 F.2d 307, 311 (5th Cir.1991); *Hook,* 33 Ohio App.3d at 103, 514 N.E.2d 721. *See also State v. Pruitt*, 18 Ohio App.3d 50, 57, 480 N.E.2d 499 (8th Dist.1984) (holding that the right to counsel was violated when the trial court gave defendant the choice of continuing trial with appointed counsel whom defendant did not trust or proceeding pro se, when record did not indicate that defendant's request for other counsel was for purposes of delay or was not in good faith); *State v. Bevins*, 1st Dist. Hamilton No. C-050481, 2006-Ohio-5455, ¶ 30 (finding no error in denying a motion for self-representation, when it appeared that defendant was attempting to manipulate the court and delay the proceedings). But here, there was no indication that Nelson was seeking to delay the proceedings. These serious charges were brought to trial within three months of the indictment and within one week after Ionna had been allowed to withdraw and the court had denied Nelson's request for replacement counsel.

{¶45} One understands the frustrations of the trial court in managing Nelson, who at times showed irreverence towards the court and the judicial process. But considering the importance of the right to counsel for serious offenses and the

14

requirement of a "knowing, intelligent, and voluntary" waiver, one must reject as constitutionally invalid a claim of waiver based on a record that reflects anything less. *See Proctor*, 166 F.3d at 402 (holding that a criminal defendant may be denied the right to counsel only when the "circumstances unequivocally demonstrate a waiver, either when a defendant knowingly, voluntarily, and clearly asserts the mutually exclusive right to self-representation, or through delay or other conduct inconsistent with its continuation"); *Trapp*, 52 Ohio App.2d at 193, 368 N.E.2d 1278 (holding that the "constitutional demands of due process and fair trial outweigh * * * policies favoring wide judicial discretion and the prompt and efficient dispatch of court business").

{¶46} I conclude that the record is devoid of a voluntary, knowing, and intelligent waiver by Nelson of the right to counsel. Accordingly, I would sustain the assignment of error on this basis.

Please note:

The court has recorded its own entry on the date of the release of this opinion.