[Cite as *State v. Furr*, 2018-Ohio-2205.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-170046 |
| | | TRIAL NO. B-1601520 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| KONO FURR, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  June 8, 2018

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Sarah E. Nelson*, Assistant Public Defender, for Defendant-Appellant.

**MYERS, Presiding Judge.**

{¶1}  Kono Furr appeals his convictions for burglary and possessing criminal tools.  He argues that the court should not have let him represent himself and should not have allowed him to appear before the jury in his jail clothing.  We conclude that his assignments of error have no merit, so we affirm the trial court's judgment.

### *Right to Counsel*

{¶2}  In his first assignment of error, Furr argues that the trial court committed structural error and violated his right to counsel by failing to have counsel present at all stages of the proceedings, including the court's hearings on his waiver of counsel.  In his second assignment of error, Furr argues that the court committed structural error by discharging counsel before Furr made a clear and unequivocal request to represent himself.  Because both arguments allege structural error involving the deprivation of counsel, we discuss them together.

{¶3}  The structural-error doctrine exists "to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial."  *Weaver v. Massachusetts*, ____ U.S. ____, 137 S.Ct. 1899, 1907, 198 L.Ed.2d 420 (2017).  A structural error is a constitutional error of such magnitude that it "affect[s] the framework within which the trial proceeds."  *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).  Because a structural error is deemed prejudicial per se, it requires an automatic reversal.  *State v. Davis*, 127 Ohio St.3d 268, 2010-Ohio-5706, 939 N.E.2d 147, ¶ 22.

{¶4}    Consistent with the presumption that most constitutional errors are not structural, structural errors have been recognized only in a very limited class of cases. *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 18; *Johnson v. United States*, 520 U.S. 461, 468-469, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997).    As relevant to this appeal, structural errors have been found in cases involving the complete denial of counsel, *see Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and the denial of the right to self-representation, *see McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984).

{¶5}    A criminal defendant's right to counsel during critical stages of the prosecution is guaranteed by the Sixth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, and by Article I, Section 10, of the Ohio Constitution. *Gideon* at 342; *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227.    The right to counsel "implicitly embodies a 'correlative right to dispense with a lawyer's help.' "    *Martin* at ¶ 23, quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.E.2d 268 (1942).    The right to represent oneself "is thwarted when counsel is forced upon an unwilling defendant, who alone bears the risks of a potential conviction." *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 26, citing *Faretta v. California*, 422 U.S. 806, 819-820, 95 S.Ct. 2525, 45 L.Ed.2d 52 (1975).

{¶6}    Both the United States Supreme Court and the Supreme Court of Ohio have recognized a criminal defendant's right to defend herself or himself at trial without counsel when the defendant knowingly, intelligently, and voluntarily chooses to do so. *See Faretta* at 819-820; *State v. Gibson*, 45 Ohio St.2d 366, 377,

345 N.E.2d 399 (1976). The defendant's decision to waive the right to counsel need not itself be counseled. *See Montejo v. Louisiana*, 556 U.S. 778, 786, 129 S.Ct. 2079, 173 L.Ed.2d 955 (2009).

{¶7} In Ohio, Crim.R. 44 governs the procedure for waiver of counsel in "serious offense" cases. Under Crim.R. 44(A), where a defendant charged with a serious offense is unable to obtain counsel, counsel must be assigned to represent the defendant at all stages of the proceedings, unless the defendant, after being fully advised of the right to counsel, knowingly, intelligently, and voluntarily waives the right to counsel. In addition, in a serious-offense case, the waiver of counsel must be in writing. *See* Crim.R. 44(C). A "serious offense" includes any felony. *See* Crim.R. 2(C).

{¶8} The written waiver provision of Crim.R. 44(C) is not a constitutional requirement, so a trial court needs only to substantially comply with Crim.R. 44(A). *See Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, at ¶ 38. Substantial compliance with Crim.R. 44(A) is demonstrated where the trial court made a sufficient inquiry to determine whether the defendant fully understood and intelligently relinquished the right to counsel. *Id.* at ¶ 39. If the court substantially complies with Crim.R. 44(A), the failure to file a written waiver is harmless error. *Id.*

{¶9} The trial court should explain to the defendant "the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *Gibson*, 45 Ohio St.2d at 377, 345 N.E.2d 399, quoting *Von Moltke v. Gillies*, 332 U.S. 708, 723, 68 S.Ct. 316, 92 L.Ed. 309 (1948). In addition, the court

should explain that the defendant "will be required to follow the same rules of procedure and evidence which normally govern the conduct of a trial." *State v. Vordenberge*, 128 Ohio App.3d 488, 2002-Ohio-1612, 774 N.E.2d 278, ¶ 12 (1st Dist.), quoting *State v. Doane*, 69 Ohio App.3d 638, 646-647, 591 N.E.2d 735 (11th Dist.1990).

{¶10} The assertion of the right to self-representation must be clear and unequivocal. *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶ 72. The defendant should be made aware of the disadvantages of self-representation, so that the record will establish that the defendant's choice "is made with eyes open." *Adams*, 317 U.S. at 279, 63 S.Ct. 236, 87 L.Ed. 268. "Whether a defendant's choice was made with eyes open typically 'depend[s], in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.' " *Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, at ¶ 30, quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Whether a defendant knowingly, intelligently, and voluntarily waived the right to counsel is an issue that we review de novo. *State v. Nelson*, 2016-Ohio-8064, 75 N.E.3d 785, ¶ 17 (1st Dist.).

{¶11} In this case, defense counsel was appointed for Furr before his arraignment. Counsel appeared for him at arraignment and at a subsequent bond hearing, and filed discovery requests on his behalf. Despite having appointed counsel, Furr filed a pro se motion to dismiss the charges for lack of jurisdiction.

{¶12} At a hearing on the motion, defense counsel informed the court that Furr had told her not to come to court and that Furr wanted to address the court about obtaining other counsel. The court asked Furr if he wanted the court to

appoint counsel or if he was going to hire counsel. Furr responded, "Maybe private counsel. I talked to my family." The court permitted defense counsel to withdraw and, at Furr's request, continued the matter for a week. The court told Furr that if he did not hire counsel by that time, the court would appoint counsel for him. Furr signed the court's entry continuing the matter.

{¶13} At the next hearing, the court asked Furr if he had gotten an attorney, and Furr responded that he did not need an attorney. The court asked if he wanted it to appoint an attorney for him, and Furr repeated that he did not need an attorney. The court asked, "So you want to be pro se and represent yourself?" Furr responded, "Well, I'll be in propria persona, not pro se." The court strongly advised him to have an attorney because he faced up to eight years in prison for the burglary charge. Furr responded, "I don't need an attorney, Your Honor. I told you that already." Furr asked the court to set the matter for trial.

{¶14} Before the scheduled trial date, the court held a pretrial hearing at which Furr continued to maintain that the charges against him should be dismissed, apparently claiming "sovereign citizen" status. At this hearing, Furr stated to the court, "I am the beneficiary of the trust, and I appoint you as my trustee. As my trustee[,] I want you to dismiss this matter I'm accused of immediately." Furr reiterated that he did not need an attorney. The court strongly urged Furr to at least have an attorney to assist him at trial, but Furr said, "I don't need no one to represent me. I told y'all plenty of times I don't need no one to represent me."

{¶15} When the court informed Furr that the trial was scheduled within a few weeks, Furr objected, arguing that government officers "were exhibiting unlawful actions against the Sovereign people, and the formality of the law, you are personally

liable for their actions." The court explained that Furr would be held to the "same rules of evidence, the rules of the Court, the rules of procedure. That's why I'm practically begging you to get an attorney." Furr said that he did not need an attorney.

{¶16} On the date scheduled for trial, the court contacted the county public defender's office. The chief of the felony division of that office arrived at the courtroom before proceedings commenced, and attempted to speak with Furr about possible representation, but Furr declined to speak with him.

{¶17} The court then asked Furr if he still wished to proceed without an attorney, and Furr confirmed that he did. The court explained to Furr that he was charged with burglary, a felony of the second degree, and possession of criminal tools, a felony of the fifth degree. The court informed him of the elements of the offenses and the potential penalties for each. The court explained that he was presumed innocent until proven guilty beyond a reasonable doubt, and that the burden of proof for the elements of the offenses was upon the prosecution. The court defined "reasonable doubt" and "proof beyond a reasonable doubt."

{¶18} The court explained that there were potential defenses to the charges, including alibi. The court defined the terms "alibi" and "affirmative defense," and explained that the burden of going forward with the evidence of an affirmative defense, and that the burden of proof, by a preponderance of the evidence, is on the accused. The court told Furr that if he proposed to offer testimony to establish an alibi, he was required to file and serve upon the prosecutor, not less than seven days before trial, written notice of his intention to claim an alibi. The court described

what the notice of alibi must include, and explained that the failure to file the notice could result in the court's exclusion of the alibi evidence.

{¶19} The court explained that Furr would be able to cross-examine witnesses who testified against him at trial, and that he could require witnesses to come to court, using subpoenas. The court told him that he could choose not to testify for himself and that no one could use his silence against him or comment on it. In addition, the court provided Furr with a printed copy of its verbal explanation.

{¶20} The court again asked Furr if he wished to have an attorney appointed to represent him, and Furr responded that he was "making a special limited appearance on behalf of the defendant, who is right here." The court explained that Furr was the defendant. Furr insisted that the court dismiss the charges against him because he did not "accept these proceedings."

{¶21} The court instructed Furr to sign a waiver of counsel, but Furr refused, stating, "Ma'am, I told you, I do not want a contract with you." The court explained that the waiver of counsel was not a contract, and Furr stated, "Wherever I sign my name is a contract, ma'am." Furr refused to sign a written waiver of counsel because, according to the trial court, "he believe[d] it would be entering into a contract."

{¶22} When Furr asked to see the trial court's oath of office, the court informed him:

> Sir, we're not going to proceed this way.
>
> I know that you have been through the criminal justice system before. I know that you have been represented by counsel.
>
> I cannot make any comment or infer anything. You are innocent until proven guilty, but I do know that you have been

represented before, and there is no contract. You are not going to see my oath of office.

{¶23} The court ordered that Furr undergo a competency evaluation to ensure that he was competent to stand trial. The court noted that Furr had refused to meet with the public defender, and stated:

Further, Mr. Furr has made statements here today about contracts with the [c]ourt, and statements that concern me that Mr. Furr may not be competent to understand the proceedings that are happening – occurring here.

{¶24} The court noted that it had "concerns, given the statements that he made and his refusal to meet with [the public defender]."

{¶25} Furr then participated in a competency evaluation by a court psychologist. According to the psychologist's report, Furr was competent to stand trial. The report indicated that Furr was 44 years old, had gone to school through the tenth grade, and had later obtained his GED. His criminal history was extensive and included convictions for domestic violence, carrying a concealed weapon, several felony drug-trafficking offenses, receiving stolen property, and felonious assault. Furr had served two prison terms.

{¶26} According to the report, Furr had informed the psychologist that he would act as his own attorney because his defense attorneys in his prior criminal cases had not effectively advocated for him. The report indicated that Furr understood the felony charges against him and the possible penalties, including imprisonment. He was able to identify the roles of courtroom participants, possible outcomes, legal strategies, and legal options. According to the report, Furr was

capable of understanding the nature and objective of the proceedings against him and was capable of relating to an attorney if he chose to do so.

{¶27} At the next court hearing, the court asked Furr if he would like to review the competency report, but he declined to do so. The court found Furr competent based on the expert's report. Even though the court had previously explained at length the nature of the charges, potential penalties and defenses, the court did so again and gave Furr another printed copy of the explanation.

{¶28} The court inquired several times of Furr if he still wanted to represent himself. He said that he did. The trial court determined that Furr had knowingly, intelligently, and voluntarily waived his right to counsel. Furr again refused to sign a written waiver, stating, "As I told you before, I'm going to represent myself. I don't need the entry for that." The court continued to ask if he would sign the entry. He continued to respond that he was representing himself. After several back and forth questions, Furr signed a written waiver of counsel, noting above his signature: "under duress, without prejudice, reserve all rights[.]"

{¶29} The record demonstrates that the trial court meticulously and thoroughly complied with Crim.R. 44(A). Furr clearly and unequivocally asserted his right to represent himself on multiple occasions, and knowingly, intelligently, and voluntarily waived his right to counsel. The trial court repeatedly warned Furr of the disadvantages of proceeding without counsel. The court thoroughly explained to him the nature and elements of the charges, possible defenses to the charges, and the potential sentences that he faced. The court informed him that he would be required to follow the same rules of procedure and evidence that govern the conduct of a trial. In addition, the court took extraordinary measures to ensure that he knowingly,

intelligently, and voluntarily waived his right to counsel by ordering a competency evaluation, by having a public defender try to talk to him, and by giving him a printed copy of its thorough explanations at two separate hearings.

{¶30}  Prior to trial, the case was transferred to another judge, who noted at the first hearing that Furr had elected to represent himself.  The second judge held several pretrial hearings at which it considered Furr's numerous motions to dismiss the charges.  The judge denied the motions.  During these pretrial proceedings, the second judge continued to inquire if Furr still wanted to represent himself and advised him against it.

{¶31}  We hold that the trial court made a diligent and thorough inquiry into whether Furr fully understood and intelligently waived his right to counsel.  *See Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, at ¶ 39.  Because no constitutional error occurred, no structural error occurred.  *See State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 18; *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 55.  We overrule the first and second assignments of error.

### *Jail Clothing*

{¶32}  In his third assignment of error, Furr argues that the trial court erred by compelling him to participate in a jury trial while wearing identifiable jail clothes, in violation of his right to due process.

{¶33}  The United States Supreme Court has held that a defendant's right to due process may be violated where the defendant stands trial before a jury while dressed in identifiable jail clothes.  *Estelle v. Williams*, 425 U.S. 501, 504, 96 S.Ct.

1691, 48 L.Ed.2d 126 (1976). The court recognized that "the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment." *Id.* at 504. But the court declined to establish a bright-line rule requiring a conviction to be reversed where the defendant appeared before the jury in jail clothing, acknowledging that a defendant might choose to wear identifiable jail clothing "in the hope of eliciting sympathy from the jury." *Id.* at 507-508.

{¶34} To establish that a constitutional violation occurred, the defendant must show that she or he was compelled to stand trial before a jury while dressed in identifiable jail clothing. *State v. Trowbridge*, 1st Dist. Hamilton No. C-110541, 2013-Ohio-1749, ¶ 28. The defendant's failure to object to being tried in jail clothing "is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." *Estelle* at 512-513.

{¶35} In this case, Furr has failed to demonstrate that he was compelled to stand trial in identifiable jail clothing. He raised no objection about his wearing jail clothing in front of the jury. In fact, he was asked by the court at two separate hearings whether he wanted to appear in civilian clothes before the jury. Furr never responded. He then appeared for trial in jail clothing. The court clearly informed Furr of his option to wear civilian clothes. Moreover, because the judge told the jurors to disregard the fact that Furr was wearing jail clothing, we must presume that the jurors followed the instruction. *See State v. Dalmida*, 1st Dist. Hamilton No. C-140517, 2015-Ohio-4995, ¶ 21. Therefore, we overrule the third assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**MILLER** and **DETERS, JJ.,** concur.

12

**Please note:**

The court has recorded its own entry on the date of the release of this opinion.