[Cite as *State v. Struckman*, 2020-Ohio-1232.]

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-180287 |
| | | TRIAL NO. B-1502231 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| BUDDY STRUCKMAN, | : | |
| | | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: March 31, 2020


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Scott M. Heenan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David Hoffmann*, Assistant Public Defender, for Defendant-Appellant.

**MOCK, Presiding Judge.**

{¶1} Following a jury trial, defendant-appellant Buddy Struckman was convicted of two counts of unlawful possession of a dangerous ordnance under R.C. 2923.17(A), namely an automatic weapon and a suppressor. He was also convicted of two specifications under R.C. 2941.144 that he had possessed an automatic firearm that was equipped with a suppressor. Struckman has filed a timely appeal from those convictions. We find no merit in his three assignments of error, and we affirm his convictions.

### *Factual Background*

{¶2} The record shows that on April 20, 2015, Officer Drew Jones of the Lockland Police Department received a dispatch about shots fired in the area of Maple Street and Locust Avenue. Officer Jones had interacted with Struckman at a house located at 622 Maple Street, which was near to that area. He and his partner drove to that address to investigate.

{¶3} The officers received no response when they knocked on the door. At that time, they noticed security cameras attached to the house and became worried for their safety. The officers decided to call in the SWAT team. They also obtained a search warrant for the premises.

{¶4} When the SWAT team approached the front door, they saw Struckman on the first floor of the house near the front door. After they used "flash bangs," Struckman came out of the residence, and the SWAT team turned him over to the Lockland police officers. Then the SWAT team entered to search for any people or devices that would pose a threat to the police.

{¶5}    After the SWAT team left, the Lockland police officers conducted their search.  The only part of the house that appeared to be habitable was the second floor.  The main living area was an eight-by-ten-foot room, a walkout front balcony.  In the room, the police officers found a couch, a coffee table, a rug, a television monitor, and a microwave.   They also found a garbage bag full of men's clothing, a suitcase, men's shoes, empty drink cups, and empty fast-food bags.

{¶6}    Under the couch cushions, the officers found a .45-caliber handgun.  There were nine rounds of ammunition in the gun's ten-round magazine.  Other loaded magazines and a holster for the gun were also found in the room.

{¶7}    The room had a small closet.  Officer Jones found the closet door ajar, and there was evidence that the SWAT team may have forced open the door.  The closet contained a suit jacket and men's dress clothes.

{¶8}    The officers also found a locked safe inside the closet.  Inside the safe, they found a .45-caliber MAC-10 machine gun, six loaded magazines of ammunition, a suppressor that fit the machine gun, and a detached stock.  They also found approximately 600 rounds of .45-caliber ammunition.  A firearm examiner from the Hamilton County Coroner's Office determined that the MAC-10 was a functioning fully-automatic weapon.  He also determined that the homemade suppressor was made for that weapon.

{¶9}    The officers waited several days to file charges against Struckman because they first wanted to contact federal authorities.  When they came to arrest Struckman five days later, they found him at the house at 622 Maple Street, where they had previously interacted with him.

### *Weight and Sufficiency*

{¶10} In his first assignment of error, Struckman contends that his convictions and the accompanying specifications were not supported by sufficient evidence and were against the manifest weight of the evidence. He argues that he state failed to prove that he had constructive possession of the automatic weapon and the suppressor. This assignment of error is not well taken.

{¶11} Struckman was convicted of two counts of unlawful possession of a dangerous ordnance under R.C. 2923.17(A), which states that "[n]o person shall knowingly acquire, have, carry, or use any dangerous ordnance." Former R.C. 2923.11(K)(1) and (5) defined an automatic weapon and a muffler or suppressor as dangerous ordnances.

{¶12} To "have" a dangerous ordnance within the meaning of the statute, the offender must actually or constructively possess it. *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, 968 N.E.2d 27, ¶ 14 (1st Dist.). Courts have defined constructive possession as "knowingly exercising dominion and control over an object, even though the object is not within the person's immediate physical possession." *State v. English*, 1st Dist. Hamilton No. C-080872, 2010-Ohio-1759, ¶ 32, citing *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus. The person must be "conscious of the presence of the object." *Hankerson* at 91; *Williams* at ¶ 15. The state may prove dominion and control and consciousness of the object by circumstantial evidence. *Williams* at ¶ 15; *English* at ¶ 32.

{¶13} As to the specifications, former R.C. 2941.144 provided for the imposition of a six-year prison term if the indictment contained a specification that "the offender had a firearm that is an automatic firearm or that was equipped with a firearm muffler or suppressor on about the offender's person or under the offender's

control *while committing the offense.*" (Emphasis added.) This court has stated that in proving a specification, the state need not show that the defendant actually possessed a weapon, but instead may show constructive possession. *See State v. Jackson*, 1st Dist. Hamilton No. C-140178, 2014-Ohio-5008, ¶ 18-19. *Accord State v. Walker*, 10th Dist. Franklin No. 14AP-905, 2016-Ohio-3185, ¶ 63-64. In regard to the firearm specification in R.C. 2941.141, we stated that "the state does not need to demonstrate that the defendant used the firearm to commit a felony; all that is required is that the defendant have the firearm on or about his person or under his control 'at some point' during the commission of the crime." *English* at ¶ 28, quoting *State v. Harry*, 12th Dist. Butler No. CA2008-01-0013, 2008-Ohio-6380, ¶ 53.

{¶14} The state presented circumstantial evidence to show that Struckman was living on the second floor of the property at 622 Maple Street, where police found the dangerous ordnances. The other two floors of the house were uninhabitable. The first floor was under construction, and the third floor was used as a chicken coop. The house was owned at the time by Struckman's ex-wife. The police officers testified that they frequently encountered Struckman there. They knew him well due to complaints by the neighbors about him and his own complaints to police. On police reports he filed, Struckman listed his address as 622 Maple Street. Struckman's white Chevy truck was often parked outside. The officers had never seen anyone else at the house, and they had never known Struckman to stay anywhere else.

{¶15} On the day the shots were fired, the police officers and the SWAT team formed a perimeter around the house to prevent anyone from entering or leaving. Struckman was the only person found at the house. The second floor appeared to be lived in, and they found furniture, a microwave, a toaster oven, and fast-food

wrappers on the second floor, as well as weapons and ammunition. They also found men's clothing in the closet, along with the safe containing the automatic weapon and suppressor. The officers testified that the living area was quite small, approximately eight by ten feet.

{¶16} The officers waited several days to file charges against Struckman. When they came to arrest Struckman five days later, they found him at the house. No one else was present. On bond forms, he listed his address as 622 Maple Street.

{¶17} Thus, the state presented circumstantial evidence showing that Struckman was the only person who exercised dominion and control over the area where the dangerous ordnances were found and that he would have been conscious of their presence. *See State v. Finnell*, 1st Dist. Hamilton Nos. C-140547 and C-140548, 2015-Ohio-4842, ¶ 41-45; *State v. Brown*, 1st Dist. Hamilton No. C-120327, 2013-Ohio-2720, ¶ 43; *English*, 1st Dist. Hamilton No. C-080872, 2010-Ohio-1759, at ¶ 28-29; *State v. Bailey*, 1st Dist. Hamilton Nos. C-060089 and C-060091, 2007-Ohio-2014, ¶ 35-40. The state also presented circumstantial evidence to show that Struckman had an automatic firearm and a suppressor under his control while committing the offenses.

{¶18} The record shows that a rational trier of fact could have found that the state had proven beyond a reasonable doubt all of the elements of the two counts of unlawful possession of a dangerous ordnance and the accompanying specifications. Therefore, the evidence was sufficient to support the convictions. *See State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Brown* at ¶ 44; *Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, 968 N.E.2d 27, at ¶ 25-26.

{¶19} Further, after reviewing the record, we cannot say that the trier of fact lost its way and created such a manifest miscarriage of justice that we must reverse

Struckman's convictions and order a new trial. Therefore, the convictions were not against the manifest weight of the evidence. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *Brown* at ¶ 45.

{¶20} Struckman presented witnesses who testified that Struckman did not live at 622 Maple Street in Lockland. But the jury did not find that evidence to be credible, and matters as to the credibility of evidence were for the trier fact to decide. *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 116; *State v. Wright*, 2017-Ohio-1568, 90 N.E.3d 162, ¶ 59 (1st Dist.). Therefore, we overrule Struckman's first assignment of error.

### *Waiver of Counsel*

{¶21} In his second assignment of error, Struckman contends that he was deprived of his Sixth Amendment right to counsel when his request for counsel during trial was denied. He argues that the trial court failed to obtain a waiver of counsel after his midtrial request for counsel. This assignment of error is not well taken.

{¶22} A criminal defendant's right to counsel during the critical stages of the prosecution is guaranteed by both the United States Constitution and the Ohio Constitution. *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 22; *State v. Jackson*, 1st Dist. Hamilton No. C-180160, 2019-Ohio-2933, ¶ 5. Embodied in that right is a "correlative right to dispense with a lawyer's help." *Martin* at ¶ 23, quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1943). A defendant in a state criminal trial has an independent constitutional right to represent him or herself at trial without counsel when the defendant knowingly, intelligently, and voluntarily chooses to waive

counsel. *Martin* at ¶ 24; *Jackson* at ¶ 5; *State v. Furr*, 1st Dist. Hamilton No. C-170046, 2018-Ohio-2205, ¶ 6.

{¶23} Crim.R. 44 governs the procedure for waiver of counsel in "serious offense" cases. A "serious offense" includes any felony. Crim.R. 2(C). Under Crim.R. 44(A), when a defendant is unable to obtain counsel, counsel must be assigned to represent the defendant in all stages of the proceedings, unless the defendant, after being fully advised of his right to counsel, knowingly, intelligently, and voluntarily waives his right to counsel. *Furr* at ¶ 7. The waiver must be made in open court and must be in writing. Crim.R. 44(C).

{¶24} The written waiver is not constitutionally required, so a trial court needs only to substantially comply with Crim.R. 44. *Martin* at ¶ 38; *Furr* at ¶ 8. A court substantially complies with Crim.R. 44 when it makes a sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes the right to counsel. *Martin* at ¶ 39; *Furr* at ¶ 8.

{¶25} The trial court should explain to the defendant "the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all the other facts essential to a broad understanding of the whole matter." *State v. Gibson*, 45 Ohio St.2d 366, 377, 345 N.E.2d 399 (1976); *Furr*, 1st Dist. Hamilton No. C-170046, 2018-Ohio-2205, at ¶ 9, The court must also inform the defendant of the disadvantages of self-representation and explain that the defendant will be required to follow the same rules of procedure and evidence that normally govern the conduct of a trial. *Furr* at ¶ 9; *State v. Murphy*, 1st Dist. Hamilton No. C-170390, 2018-Ohio-1063, ¶ 6.

{¶26} The defendant's assertion of the right to self-representation must be clear and unequivocal. *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶ 72; *Furr* at ¶ 10. We review the propriety of a defendant's waiver of the right to counsel de novo. *Jackson*, 1st Dist. Hamilton No. C-180160, 2019-Ohio-2933, at ¶ 5; *Furr* at ¶ 10.

{¶27} Struckman's argument must be understood in the context of the entire proceeding, which took well over three years, mostly due to Struckman's issues with counsel. Originally, Struckman had retained counsel. Counsel asked to withdraw due to a breakdown in communication and Struckman's lack of cooperation. The trial court allowed counsel to withdraw and told Struckman that it would appoint counsel. Struckman asked, "Am I allowed to defend myself in this matter?" The court told him "it's not a very smart thing to do." The court asked Struckman a few questions about his issues with counsel, and engaged in a dialogue about the right to counsel and what would happen if Struckman chose to represent himself. The court ultimately said that it would not let Struckman make the decision until he considered everything. It appointed counsel, indicating, "I can change later."

{¶28} Struckman went through three or four more attorneys, all of whom withdrew because of a breakdown in communication. One of them filed a suggestion of incompetency, although Struckman was ultimately found competent to stand trial.

{¶29} Struckman asked the trial judge to recuse himself, and the judge did so. A new judge was assigned to the case. The court appointed another attorney for Struckman, but essentially told him it would be the last, stating, "You two are married." Counsel told the court that Struckman had asked him if he could "be co-counsel." Counsel had advised him "under Ohio law there is no such thing as co-counsel." The court agreed.

{¶30} Several months later, Struckman filed a pro se motion asking counsel to withdraw. Subsequently, he filed a pro se motion stating that he waived his right to counsel under Crim.R. 44 and chose to proceed pro se. At a hearing on his motions, counsel stated, "From day one, he has told me, and I believe that he has told some of his other attorneys, that he wanted to represent himself." The court then engaged in an extensive dialogue with Struckman about his experience with the criminal justice system, his competency, the nature of his problem with his attorney, his education level, the charges against him, trial procedure, sentencing, and other issues. The court stated it would take the issue under advisement. In the meantime, it advised Struckman to work with counsel and that "he blows you out of the water with regard to legal knowledge."

{¶31} Eventually, the court permitted counsel to withdraw. It told Struckman that he was making "a serious mistake," that he would have a "fool for a client," and that he was "absolutely treading on dangerous waters."

{¶32} The case proceeded to trial before a visiting judge on March 5, 2018. The court stated it was going to "take a few minutes to make sure that you are knowingly and willingly giving up your right to an attorney." It discussed Struckman's relationship with his previous attorneys and the reasons why he wished to represent himself. The trial court explained in depth the charges Struckman was facing, the rights he was waiving, what would happen during the trial, and what he would need to know if he represented himself. At the end, the court asked him what he wanted to do. Struckman replied, "I would like to represent myself and go forward with trial." The court presented Struckman with a written waiver of counsel form, telling him to read it before he signed it, and if he had any doubts or did not

understand anything, "then do not sign it and ask me questions." Struckman said he had no questions and signed it.

{¶33} Two days later, the court journalized an entry appointing standby counsel to represent Struckman. At the next hearing, counsel indicated that Struckman had sent him an email stating, "At this time I request to represent myself as pro se which was my original intention and goal." Struckman had also requested that counsel continue as standby counsel. Counsel stated that he and Struckman had had a breakdown in communication and that they fundamentally disagreed on how to proceed. The court again engaged in an extensive dialogue with Struckman about what it meant to represent himself. The court again had him sign a written waiver of counsel and determined that he had knowingly, voluntarily and intelligently waived his right to counsel.

{¶34} Struckman represented himself throughout the state's case. After the state had rested and he commenced presenting his case, Struckman's standby counsel informed the court that Struckman wanted him to take over Struckman's defense. Struckman confirmed this. This occurred on a Friday afternoon, so the court ended the proceedings early to allow counsel to prepare over the weekend.

{¶35} That Monday, counsel advised the court that he was not able to take over Struckman's defense due to his other commitments. The court asked Struckman if he wanted an attorney from the public defender's office to represent him. Struckman replied, "No, your Honor." The court indicated that "the trial is 80 to 90 percent complete. If you have a private attorney that you've hired to take over your representation, that, of course, will be permitted." Struckman said that he did not want one. He also said that he was comfortable with counsel remaining as standby counsel.

11

**{¶36}** The court then stated:

And I just want to summarize with you, Mr. Struckman, as I told you when this trial started, you had the opportunity to tell me you wanted an attorney during the trial. While that's true, you know, this trial is 80 to 90 percent completed. * * * And you really can't expect [counsel] or somebody from the public defender's office or any attorney to step forward and take over when the trial is 80 to 90 percent completed. It's just not realistic.

And it would put that attorney at a high risk of—well, making mistakes that he or she would be responsible for.

So while I told you that you could change your mind at any time, that assumed that it would be a reasonable time and that people would be available.

Struckman did not object in any way. The court continued the case briefly to give Struckman time to prepare.

**{¶37}** It is this final exchange with which Struckman now takes issue. He argues that a new colloquy should have occurred to determine if he was voluntarily waiving his right to counsel and the court should have had him sign a new written waiver. But the record shows that, Struckman was informed many times of the dangers of representing himself and the rights he would be waiving. After counsel sought to withdraw, Struckman indicated that he did not want to have an attorney appointed for him or to retain one. He once again unequivocally stated that he wanted to represent himself. *See Jackson*, 1st Dist. Hamilton No. C-180160, 2019-Ohio-2933, at ¶ 6-10. He did not in any way indicate that he was revoking or rescinding his waiver of counsel or abandoning his right to self-representation. *See*

12

*State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 31; *State v. Cook*, 2016-Ohio-2823, 64 N.E.3d 350, ¶ 90-92 (5th Dist.); *State v. Brown*, 4th Dist. Hocking No. 93CA20, 1994 WL 312905, *3 (June 29, 1994). In the context of the entire proceedings, it was obvious that he was again voluntarily waiving his right to counsel and representing himself. It was not necessary for the court to go through the whole colloquy yet again. *See Jackson* at ¶ 10.

{¶38} Further, at that time, Struckman's counsel indicated that he had had eight or nine attorneys, and he could not work with any of them. The right to counsel does not give an indigent defendant the right to counsel of his choice. Therefore, self-representation may be deemed voluntary where the court finds a valid waiver of the right to counsel due to the defendant's refusal to proceed with competent court-appointed counsel. *State v. Nelson*, 2016-Ohio-8064, 75 N.E.3d 785, ¶ 22 (1st Dist.). By rejecting appointed counsel so many times, Struckman "necessarily chose self-representation." *See id.* at ¶ 27. Under the circumstances, we overrule Struckman's second assignment of error.

### *Competency*

{¶39} In his third assignment of error, Struckman contends that the trial court erred in finding him competent to stand trial. He argues that the trial court had originally found him incompetent to stand trial, but then relied on additional less-credible evaluations to find him competent. This assignment of error is not well taken.

{¶40} The test for determining whether a defendant is competent to stand trial is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as a factual understanding of the proceedings against him." *State v.*

*Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 45. A defendant is presumed competent to stand trial, and the burden is on the defendant to prove by a preponderance of the evidence that he is not competent. *State v. Jordan*, 101 Ohio St.3d 216, 2004-Ohio-783, 804 N.E.2d 1, ¶ 28.

{¶41} Incompetency must not be equated with mere mental or emotional instability or even with outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel. *State v. Vrabel*, 99 Ohio St.3d 184, 2003-Ohio-3193, 790 N.E.2d 303, ¶ 29. Further, lack of cooperation with counsel is not sufficient indicia of incompetence to raise doubt about a defendant's competence to stand trial. *Id.* at ¶ 30.

{¶42} A trial court's finding that a defendant is competent to stand trial will not be disturbed when there is some reliable and credible evidence supporting that finding. *Were* at ¶ 46. Deference on those issues should be given "to those who see and hear what goes on in the courtroom." *State v. Cowans*, 87 Ohio St.3d 68, 84, 717 N.E.2d 298 (1999). Further, Struckman did not object to being found competent to stand trial and forfeited any error but plain error. *Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, at ¶ 52.

{¶43} Early in the proceedings, one of Struckman's attorneys raised the issue of incompetency. He noted that Struckman had told him he had had a concussion the day before. He stated that "based on that and the conversations we're having today, I believe I need to request a competency evaluation * * *." The court ordered an evaluation. That evaluation found that even though Struckman had never been diagnosed with a mental illness, he had a history of impulsiveness and poor decision making. It stated that he was not capable of understanding the nature and objective

of the proceedings or of assisting counsel in preparing for the defense. Therefore, he was incompetent to stand trial. Because Struckman disagreed with that finding, the court ordered a second evaluation.

{¶44} The second evaluation found him to be competent to stand trial. His counsel could not stipulate to that report because of his conversations with Struckman. He also felt like he had a conflict of interest because he might have to testify regarding competency. Consequently, the court permitted him to withdraw as counsel, appointed new counsel, and ordered a third evaluation.

{¶45} The third report also stated that Struckman was competent to stand trial. Both Struckman's new counsel and the state stipulated to that report. The court then found Struckman competent to stand trial. The trial court was entitled to rely on the opinions of the experts who conducted the second and third evaluations, rather than the first. Competent, credible evidence supported its decision that Struckman was competent to stand trial.

{¶46} At the hearings on both the second and third evaluations, the court also heard arguments about Struckman's motion for a reduction in bond. In arguing that the competency reports were not credible, Struckman relies on the prosecutor's arguments against a reduction which were based on all three psychiatric reports. The state used the information in those reports to show that Struckman was a threat to the public in relation to the bond reduction. That is a separate issue from whether he was competent to stand trial, and the prosecutor's comments were irrelevant to the issue of whether Struckman was competent to stand trial. As we have previously stated, incompetency should not be equated with mental instability or insanity. *See Vrabel*, 99 Ohio St.3d 184, 2003-Ohio-3193, 790 N.E.2d 303, at ¶ 9.

**{¶47}** Under the circumstances, we cannot say that the trial court erred in finding Struckman competent to stand trial, much less that it committed plain error. Therefore, we overrule Struckman's third assignment of error.

### *Summary*

**{¶48}** In sum, we hold that (1) the evidence was sufficient to support Struckman's convictions for the two counts of possession of a dangerous ordnance and the accompanying specifications; (2) the convictions were not against the manifest weight of the evidence; (3)  Struckman was not denied the right to counsel; and (4) the trial court did not err in finding him competent to stand trial. Consequently, we overrule his three assignments of error, and we affirm the trial court's judgment.

Judgment affirmed.


**ZAYAS** and **BERGERON, JJ.,** concur.


Please note:

The court has recorded its own entry this date.