[Cite as *State v. Struckman*, 2021-Ohio-1043.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-200069 |
| | | C-200210 |
| Plaintiff-Respondent-Appellee, | : | TRIAL NO. B-1502231 |
| vs. | : | |
| BUDDY EUGENE STRUCKMAN, | : | *O P I N I O N.* |
| Defendant-Petitioner-Appellant. | : | |

Criminal Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed From Are:     Affirmed in C-200069;
                                 Appeal Dismissed in C-200210

Date of Judgment Entry on Appeal: March 31, 2021

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Ronald Springman,* Assistant Prosecuting Attorney, for Plaintiff-Respondent-Appellee,

*Buddy Eugene Struckman*, pro se.

ZAYAS, **Presiding Judge.**

{¶1} Defendant-petitioner-appellant Buddy Eugene Struckman appeals the Hamilton County Common Pleas Court's judgments overruling his Crim.R. 33 motion for a new trial and denying his petition under R.C. 2953.21 for postconviction relief. We dismiss for lack of jurisdiction Struckman's appeal from the overruling of his new-trial motion. And we affirm the common pleas court's judgment denying postconviction relief.

{¶2} In May 2018, Struckman was convicted upon jury verdicts finding him guilty of two counts of unlawful possession of a dangerous ordnance. We affirmed those convictions in the direct appeal. *State v. Struckman*, 1st Dist. Hamilton No. C-180287, 2020-Ohio-1232, *appeal not accepted*, 159 Ohio St.3d 1446, 2020-Ohio-3712, 149 N.E.3d 523.

{¶3} Struckman also sought relief from his convictions by filing with the common pleas court, in August 2018, motions for a new trial and for leave to move for a new trial out of time and, in November 2019, a petition under R.C. 2953.21 et seq. for postconviction relief. Here, in the case numbered C-200210, he appeals the judgment overruling his motion for a new trial. And in the case numbered C-200069, he appeals the judgment denying his postconviction petition.

*App. No. C-200210—No Appeals Court Jurisdiction*

{¶4} We address at the outset the state's argument that Struckman's appeal in C-200210, from the common pleas court's judgment overruling his motion for a new trial, must be dismissed for lack of jurisdiction. We agree.

{¶5} A timely filed notice of appeal confers upon a reviewing court the jurisdiction to entertain an appeal. *See* App.R. 3(A) and 4; *State ex rel. Curran v. Brookes*, 142 Ohio St. 107, 50 N.E.2d 995 (1943), paragraph seven of the syllabus.

Generally, the notice of appeal must be filed within 30 days of entry of the final judgment sought to be appealed. App.R. 4(A)(1). If the notice of appeal is not timely filed, the appellant in a criminal case may move under App.R. 5 for leave to file a delayed appeal. In a civil case, "if the clerk has not completed service of the order [appealed] within the three-day period prescribed in Civ.R. 58(B)," the 30-day appeal period is tolled and does not "begin to run [until] the date when the clerk actually completes service." App.R. 4(A)(3).

{¶6} The notices of appeal in C-200210 and C-200069 were not filed within the 30 days prescribed by App.R. 4(A)(1). Struckman did not, in either appeal, seek leave under App.R. 5 to file a delayed appeal. And neither the judgment denying postconviction relief nor the judgment overruling the new-trial motion has been served on Struckman.

{¶7} *Appeal from denial of postconviction petition was timely filed.* The proceedings upon a petition under R.C. 2953.21 et seq. for postconviction relief are civil in nature and governed by the Ohio Rules of Appellate Procedure as they apply to a civil action. *State v. Nichols,* 11 Ohio St.3d 40, 463 N.E.2d 375 (1984), paragraph two of the syllabus. Thus, regardless of whether the petitioner actually knows of the judgment denying postconviction relief, the time for appealing that judgment is tolled under App.R. 4(A)(3) and begins to run only "upon service of notice of the judgment and notation of service on the docket by the clerk of courts." *State v. Young*, 1st Dist. Hamilton No. C-140236, 2015-Ohio-774, ¶ 4, quoting *Clermont Cty. Transp. Improvement Dist. v. Gator Milford, L.L.C.*, 141 Ohio St.3d 542, 2015-Ohio-241, 26 N.E.3d 806, syllabus. Because Struckman was not served with the judgment denying his postconviction petition, App.R. 4(A)(3) tolled the time for appealing that judgment. Thus, his appeal from that judgment in C-

200069 was filed within the time prescribed by App.R. 4(A)(1), and this court has jurisdiction to review that judgment.

**{¶8}** *Appeal from overruling of Crim.R. 33 motion was not timely filed.* But proceedings under Crim.R. 33 are not civil in nature. Therefore, App.R. 4(A)(3) did not, as Struckman argues, toll the time for appealing the overruling of his Crim.R. 33 motion for a new trial.

**{¶9}** Nor was the time for appealing the overruling of the new-trial motion tolled under any exception to App.R. 4(A)(1)'s 30-day period provided under App.R. 4(B). App.R. 4(B)(3) speaks directly to the time for appealing a decision on a "timely" filed "post-judgment" motion for a new trial in a criminal case. Under App.R. 4(B)(3), when a criminal defendant moves under Crim.R. 33(A) for a new trial, whether on grounds of newly discovered evidence or other grounds, and that motion is filed within the time provided under Crim.R. 33(B) for filing a motion for a new trial on grounds other than newly discovered evidence, the time for appealing the judgment of conviction is tolled until the new-trial motion is decided, and the decision on the new-trial motion is then reviewable in the direct appeal. Unless that exception applies, an appeal from a judgment overruling a Crim.R. 33 motion must be filed within App.R. 4(A)(1)'s 30-day period.

**{¶10}** Struckman sought a new trial under Crim.R. 33(A)(1) through (4) and 33(A)(6). A Crim.R. 33(A)(6) motion for a new trial on the ground of newly discovered evidence must be filed within 120 days of the return of the verdict. A motion for a new trial on other grounds must be filed within 14 days of the return of the verdict. Crim.R. 33(B).

4

{¶11} Struckman's verdicts were returned on May 3, 2018. He filed his Crim.R. 33 motion more than three months later, on August 22, 2018. The trial court overruled the motion on September 17, 2018. That judgment was appealed on May 22, 2020. To the extent that the motion sought a new trial on the ground of newly discovered evidence, it was timely filed for purposes of Crim.R. 33, but not for purposes of App.R. 4(B)(3)'s tolling provision. To the extent the motion sought a new trial on other grounds, it was not timely filed for either purpose.

{¶12} Thus, App.R. 4(B)(3) did not operate to toll the time for appealing the judgment overruling Struckman's Crim.R. 33 motion. His notice of appeal from that judgment in C-200210 was not filed within App.R. 4(A)(1)'s 30-day period. And he was not granted, because he did not seek, leave under App.R. 5 to file a delayed appeal. Therefore, this court has no jurisdiction to review that judgment, and the appeal in C-200210 must be dismissed.

*App. No. C-200069—Postconviction Petition Properly Denied*

{¶13} In the case numbered C-200069, Struckman presents four assignments of error that may fairly be read together to challenge the denial of his postconviction petition without an evidentiary hearing. Finding no merit to any aspect of this challenge, we overrule the assignments of error.

{¶14} *The trial.* Struckman was convicted of unlawfully possessing dangerous ordnances upon evidence that he had constructively possessed a MAC-10 automatic weapon and suppressor that had been seized in a search pursuant to a warrant of the house in which he was living. *See Struckman*, 1st Dist. Hamilton No. C-180287, 2020-Ohio-1232, at ¶ 14. Police Officer Drew Jones of the Lockland Police Department testified that he and his partner, Sergeant Patrick Sublet, were

5

dispatched to the area of 622 Maple Street upon a 911 call reporting "a shot fired." Their investigation led them to the house at 622 Maple Street, because Officer Jones had had multiple prior contacts with Struckman there. No one responded when the officers knocked on the door. Their observation of security cameras attached to the house caused them concern for their safety and prompted them to obtain a warrant to search the house and to summon a SWAT team to secure the premises before the warrant was executed.

{¶15} When the SWAT team approached the front door, they saw Struckman on the first floor of the house near the front door. The team used "flash bangs" to encourage Struckman to come out of the house, and he was turned over to Lockland police. The team then went through the house to secure the premises for Lockland officers to conduct their search.

{¶16} Upon entering the house, police observed that the only habitable part of the house was a small living area on the second floor, consisting of an eight-by-ten-foot room, with a small closet and a walkout balcony to the front of the house. The room was furnished with a sofa, coffee table, rug, television monitor, and microwave. And it contained a trash bag full of men's clothing, a suitcase, men's shoes, and empty drink cups and fast-food bags.

{¶17} Pursuant to the warrant, police seized from the living area multiple loaded magazines and a holster for a .45-caliber semi-automatic handgun found under the sofa cushions. Nine rounds of ammunition were found in the gun's ten-round magazine.

{¶18} The door to the closet was open, possibly by force by the SWAT team in securing the premises. The closet contained a suit jacket and men's dress clothes.

And police seized from the closet multiple boxes containing 600 rounds of .45-caliber ammunition.

{¶19} The fire department was summoned to force open a safe found in the closet. From the safe, police seized the MAC-10 and suppressor that Struckman was charged with unlawfully possessing, along with a detached stock for the MAC-10, two high-capacity magazines fully loaded with .45-caliber ammunition, and a bandolier with three fully loaded magazines. A firearm examiner from the Hamilton County Coroner's Office determined that the MAC-10 was a functioning fully-automatic weapon, and that the homemade suppressor had been made for the MAC-10.

{¶20} For the MAC-10 and suppressor, Struckman was charged with two counts of unlawful possession of a dangerous ordnance in violation of R.C. 2923.17(A), along with two specifications under R.C. 2941.144 that he had possessed an automatic firearm equipped with a suppressor. Struckman was arrested at 622 Maple Street. He represented himself at trial. The jury found him guilty as charged. And the trial court sentenced him to prison terms totaling seven years.

{¶21} *The appeal.* In the direct appeal, we affirmed those convictions. In doing so, we overruled assignments of error challenging the weight and sufficiency of the evidence to prove that Struckman had constructively possessed the MAC-10 and suppressor, the trial court's failure to secure a waiver of counsel after rejecting Struckman's midtrial request for appointed counsel, and the trial court's finding that Struckman was competent to stand trial.

{¶22} *The postconviction petition.* In the postconviction petition from which this appeal derives, Struckman sought relief from his convictions on grounds of judicial bias and misconduct and alleged deprivations of the rights to

counsel and the effective assistance of counsel. The common pleas court denied the petition upon concluding that the postconviction claims were barred under the doctrine of res judicata, when they were or could have been raised on direct appeal.

{¶23} To prevail on a postconviction claim, the petitioner must demonstrate a denial or infringement of his rights in the proceedings resulting in his conviction that rendered the conviction void or voidable under the Ohio or United States Constitution. *See* R.C. 2953.21(A)(1). In advancing that claim, the petitioner bears the initial burden of demonstrating, through the petition and any supporting affidavits and the files and records of the case, "substantive grounds for relief." R.C. 2953.21(C).

{¶24} A postconviction claim is subject to dismissal without a hearing if the petitioner fails to submit with his petition evidentiary material setting forth sufficient operative facts to demonstrate substantive grounds for relief. *See id.*; *State v. Pankey*, 68 Ohio St.2d 58, 428 N.E.2d 413 (1981); *State v. Jackson*, 64 Ohio St.2d 107, 413 N.E.2d 819 (1980). Conversely, "the court must proceed to a prompt hearing on the issues" if "the petition and the files and records of the case show the petitioner is * * * entitled to relief." R.C. 2953.21(E).

{¶25} The common pleas court denied Struckman's postconviction claims under the doctrine of res judicata. "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding[,] except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial [that] resulted in that judgment of conviction, or

on an appeal from that judgment." *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph nine of the syllabus.

{¶26} A postconviction petitioner may resist dismissal of a postconviction claim under the doctrine of res judicata by supporting his claim with evidence outside the record of the proceedings resulting in the conviction. But submitting outside evidence will not, by itself, preclude denying the claim under the doctrine of res judicata. Outside evidence must be "competent, relevant and material" to the claim. The evidence must "meet some threshold standard of cogency," in the sense that it is more than "marginally significant" and "advance[s] the * * * claim beyond mere hypothesis and a desire for further discovery." *State v. Coleman*, 1st Dist. Hamilton No. C-900811, 1993 WL 74756 (Mar. 17, 1993). The evidence must be other than cumulative of or alternative to the evidence presented at trial. *State v. Combs*, 100 Ohio App.3d 90, 98, 652 N.E.2d 205 (1995). Finally, submitting outside evidence in support of a postconviction claim will not preclude denying the claim under the doctrine of res judicata, if the claim could fairly have been determined on direct appeal from the judgment of conviction, based upon the materials contained in the trial record. *State v. Cole*, 2 Ohio St.3d 112, 114, 443 N.E.2d 169 (1982), syllabus; *Perry* at paragraph nine of the syllabus.

{¶27} *Ineffective assistance of counsel—no outside evidence.* In his third postconviction claim, Struckman asserted that he had been denied the effective assistance of counsel, because standby counsel appointed to assist him in representing himself had failed to prepare a defense, investigate or request an investigator, inquire into his competency, or investigate "exculpatory evidence" in the form of firearm-registration requirements. Struckman did not support this claim

with evidence outside the record of the proceedings resulting in his convictions. Therefore, the common pleas court properly denied the claim under the doctrine of res judicata.

{¶28} *Ineffective assistance of counsel—motion to suppress.* In his fourth postconviction claim, Struckman asserted that he had been denied the effective assistance of trial counsel, when previously appointed counsel, in moving to suppress evidence seized in the search of 622 Maple Street, had "motioned the court for a *Franks* hearing, but * * * did not raise the issue of the sworn statement for probable cause [that is, the search-warrant affidavit] having false statements." In support of that claim, Struckman offered outside evidence consisting of a photocopy of a portion of a letter directed to him, dated two months before he filed his postconviction petition, from an unnamed person in the Office of the Hamilton County Public Defender. The letter provided a response to Struckman's question in earlier correspondence concerning whether an unstated "stipulation should also put into question the veracity of the [search-warrant affidavit]." The letter's author stated that "the issue of the veracity of the search warrant affidavit [was] raised in a motion to suppress," but "[t]he motion to suppress that was eventually presented in this case did not address this issue, and when the testimony at trial later showed that the affidavit was wrong, it was too late." The letter's author added that "[t]he falsehood in the affidavit does reflect poorly upon the credibility of the state's witnesses."

{¶29} Struckman also offered the municipal court's "probable cause checklist" to support his assertion that the affidavit "is not accurate to the checklist." And he pointed to evidence in the trial record. Struckman noted that the search-

10

warrant affidavit, which was signed by Sergeant Sublet, stated that police responding to the 911 call "attempted to contact the male but he has barricaded himself inside the residence and is refusing to answer the door." And Struckman insisted that Officer Jones's trial testimony showed that "there w[ere] not barricades [as] fabricated in the [affidavit]," and that "it was stipulated * * * that no shots were fired and the gun shot residue test was negative showing that no firearms were fired or handled by the defendant."

{¶30} To prevail on a claim of ineffective assistance of trial counsel, a postconviction petitioner must demonstrate (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced him. *See Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish prejudice, the petitioner must demonstrate that counsel's deficient performance "so undermined the proper functioning of the adversarial process that the trial could not have reliably produced a just result." *State v. Powell,* 90 Ohio App.3d 260, 266, 629 N.E.2d 13 (1993), citing *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), and *Strickland.*

{¶31} The affidavit supporting the warrant to search 622 Maple Street stated that two people in the vicinity of the house had seen a man on the second floor of the house fire a single round from a "black firearm" and then retreat into the house; that the victims had subsequently identified the man as Struckman; and that police responding to the 911 call had "attempted to contact the male but he has barricaded himself inside the residence and is refusing to answer the door." The warrant authorized a search of the house for "[t]he firearm that was used to fire at the two persons," along with "any other property that is deemed contraband." Pursuant to

11

that warrant, police seized from the small second-floor living area multiple loaded magazines and a holster for the .45-caliber semi-automatic handgun found under the sofa cushions, 600 rounds of .45-caliber ammunition found in the closet, and the MAC-10, detached stock, suppressor, and multiple loaded high-capacity magazines found in the safe.

{¶32} Counsel filed a motion to suppress the fruits of the search on the ground that the affidavit for the warrant had included false statements material to the finding of probable cause. The motion alleged that the victims' reliability had not been established, and that the affidavit had falsely stated that Struckman had fired a round at the victims. No witnesses were presented at the hearing on the motion, because, as counsel complained, the police officers who had been subpoenaed did not appear. Counsel presented a copy of the affidavit and argued that it was overly broad and vague, and that it was insufficient to show probable cause because the victims were not named in the affidavit and were not otherwise established as reliable witnesses.

{¶33} In its entry overruling the motion, the trial court applied the probable-cause analysis provided in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The court noted that the *Gates* analysis includes an inquiry into the informant's veracity or the reliability of the informant's report, and that for purposes of the warrant affidavit, a person who reports that he or she was the victim of the described criminal conduct is ordinarily considered sufficiently credible to merit belief. The court found that "under the totality of the circumstances, the affidavit for the search warrant creates a fair probability that evidence of a crime would be found at 622 Maple St." Upon that finding, the court concluded that the warrant had been

properly issued upon probable cause, and that the warrant was not too broad, vague, or unreasonable.

{¶34} At trial, Struckman cross-examined Officer Jones concerning the search-warrant affidavit signed by Sergeant Sublet. Asked by Struckman to look at photographs of the premises and confirm that they did not show "a barricade," Officer Jones denied ever suggesting that there had been a barricade. Also during Officer Jones's cross-examination, the state stipulated that "no gunshot residue was located or the results came back negative with regard to Mr. Struckman." Struckman overcame the state's objection to this line of questioning by asserting that it was relevant, and thus admissible, to show that he had not constructively possessed the weapons found in the residence.

{¶35} In his fourth postconviction claim, Struckman asserted, and offered the public defender's letter to show, that he had been denied the effective assistance of counsel, when previous appointed counsel did not challenge the veracity of the warrant affidavit with the "false" statements in the affidavit concerning "barricades" and "shots fired." But the trial court expressly found the affidavit credible based not on Sergeant Sublet's statement that Struckman had "barricaded himself inside the residence barricade," but on the presumed credibility of the victims who had reported the criminal conduct described in the affidavit. Moreover, the record includes the transcript of the proceedings on the motion to suppress, along with the testimony elicited at trial concerning the gunshot-residue test results and the absence of "barricades." Thus, the outside evidence offered in support of the fourth claim, consisting of the public defender's suggestion in his letter that a stronger case for suppression could have been made if counsel had used the alleged "falsehoods"

concerning "barricades" and "shots fired" to challenge the affidavit, was not "cogent" in the sense that it could not fairly be said to advance beyond mere hypothesis the claim of an outcome-determinative deficiency in trial counsel's presentation of the motion to suppress. Therefore, the submission of that evidence did not preclude the common pleas court from applying the doctrine of res judicata to deny the claim.

{¶36} *Judicial bias and misconduct and rights to counsel and the effective assistance of counsel.* In his first postconviction claim, Struckman alleged judicial bias and misconduct and deprivations of the rights to counsel and the effective assistance of counsel, when he continued to represent himself with standby counsel after he had requested "full counsel" in the middle of his trial. In his second postconviction claim, he asserted that standby counsel had been ineffective in refusing, without a "proper explanation," to take over the defense when asked to do so "midway" through the trial; in failing to ask the public defender about providing counsel; and in requesting, but then leaving it to him to use, trial transcripts to impeach witnesses.

{¶37} Struckman supported those claims with outside evidence in the form of an email from the trial court to standby counsel that, Struckman asserted, showed that the judge had forced him to continue representing himself. In that email, the trial court outlined the procedure that it intended to follow at the upcoming hearing on Struckman's request, made toward the end of trial, that standby counsel take over the defense. And the court asked standby counsel to share the email with Struckman.

{¶38} The record of the proceedings at the hearing showed that the trial court followed the procedure outlined in the email. The court recited the events

prompting the hearing. Struckman declined the opportunity to hire private counsel. He also declined the court's offer to ask the public defender, or to ask standby counsel to ask the public defender, to appoint an attorney to represent him. And he stated that he was "comfortable with continuing with [standby counsel] as standby counsel."

{¶39} In the direct appeal, this court overruled an assignment of error alleging that Struckman had been denied his right to counsel, when following the hearing on his midtrial request for counsel, he did not waive his right to counsel. In our decision, we detailed how the trial court had substantially complied with the Crim.R. 44 waiver requirement. And we concluded that Struckman had not been denied his constitutional right to counsel, because he had, in fact, chosen self-representation. *Struckman*, 1st Dist. Hamilton No. C-180287, 2020-Ohio-1232, at ¶ 21-38.

{¶40} In his first and second postconviction claims, Struckman alleged that the trial court, in refusing his midtrial request for appointed counsel to take over his defense, had been biased against him and had, along with standby counsel, denied his rights to counsel and the effective assistance of counsel. The outside evidence offered in support of those claims, consisting of the trial court's email to standby counsel (and through counsel, to Struckman), outlining the procedure for addressing the request that "full counsel" take over the defense, essentially confirmed what this court, in the direct appeal, determined that the record showed: that the trial court had been committed to complying with the waiver requirement and ensuring that Struckman was not denied his right to counsel. Thus, the first and second postconviction claims either were or could have been fairly determined on direct

appeal, based on matters disclosed in the trial record. Because the email was merely cumulative of the evidence of record, its submission did not preclude the common pleas court from applying the doctrine of res judicata to deny the first and second postconviction claims.

*Appeal Dismissed in C-200210 and Judgment Affirmed in C-200069*

{¶41} To summarize, we hold that this court had no jurisdiction to review the common pleas court's judgment overruling Struckman's motion for a new trial, because the notice of appeal in the case numbered C-200210 was not timely filed. *See* App.R. 3(A) and 4; *State ex rel. Curran*, 142 Ohio St. 107, 50 N.E.2d 995, at paragraph seven of the syllabus. Accordingly, we dismiss that appeal.

{¶42} And we hold that the common pleas court did not err in applying the doctrine of res judicata to deny Struckman's postconviction claims, because those claims presented matters that could fairly have been determined without resort to evidence outside the trial record. *See Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104, at paragraph nine of the syllabus; *Cole*, 2 Ohio St.3d at 114, 443 N.E.2d 169. Accordingly, in the case numbered C-200069, we affirm the court's judgment denying Struckman's petition for postconviction relief.

Judgments accordingly.

**CROUSE** and **WINKLER, JJ.**, concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.